BAKER et al. v. MAYS & MAYS.

No. 14811.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 20, 1946.

Rehearing Denied Jan. 24, 1947.

H. T. Cooper, of Fort Worth, for appellants.

Mays & Mays, Dave Miller, and Charles Mays, all of Fort Worth, for appellees.

SPEER, Justice.

This suit had its origin in County Court at Law No. One, Tarrant County, when Reliable Life Insurance Company filed a petition termed "an interpleader," asserting that it had previously issued its policy of insurance on the life of John T. Hill, that insured was dead and that it desired to pay the face value of the policy of $500 to the one entitled to receive same.

The petition named as defendants Annie P. Hill, a widow, and James N. Baker d. b. a. Baker Funeral Home. Plaintiff alleged that it had been furnished with a written assignment of the policy by Annie P. Hill, the beneficiary in the policy, to Mays & Mays (a firm of practicing attorneys in Fort Worth, Texas) and that the assignment has not been revoked; that James N. Baker, in the capacity above mentioned, is claiming an assigned interest to the extent of $220 in the policy for funeral expenses of insured, and is threatening suit on the policy. That the company does not know to whom payment should be made, and tenders into court $500 the value of the policy; it prays that the court determine the owner of the proceeds and that payment be made to the rightful owner and that it be discharged.

Annie P. Hill, the named beneficiary in the policy, answered by an intervention pleading and claimed the proceeds of the policy as the beneficiary therein; she alleges that she was the common law wife of John T. Hill, the insured, in this language: "That she and John T. Hill, deceased, agreed to enter into a contract of marriage and to live together as man and wife and that each of them was competent to enter into such contract and that in pursuance to such agreement they did live together as man and wife for a number of years and were so living at the time of the death of John T. Hill and that they did hold themselves out to the public as man and wife, and were generally so considered."

There were further allegations by Annie P. to the effect that she had for many years

received pecuniary benefits from the insured, in the way of payment of necessary living expenses; that she had a reasonable expectation that had the insured lived she would have continued to receive such benefits and because of all her allegations she had an insurable interest in the life of John T. Hill.

James N. Baker, d.b.a. Baker Funeral Home, Sidney Hill, father of John T. Hill, deceased, Albert and Clarence Hill, brothers, and Mary Davis a sister of deceased, likewise intervened, alleging that deceased had no children and that his mother was dead; that there were no brother or sister or their descendants of deceased, except those named; there were no debts owing by deceased except the funeral expenses, no administration on his estate and no necessity therefor. That the above named father, brothers and sister of John T. Hill deceased, had assigned unto intervener Baker (undertaker) an interest of $200 in said policy of insurance to cover funeral expenses, and that Baker was entitled to that amount of the proceeds and the father, brothers and sister were entitled to the remaining portion. These defendant-interveners specially denied that John T. Hill deceased, and Annie P. Hill, whose real name was Annie P. Conner, were ever married, and that she had no insurable interest in the life of John T. Hill for any of the reasons asserted by her.

Trial was to a jury on special issues. One issue was submitted; it reads:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the defendant, Annie Pearl Conner and John T. Hill, deceased, agreed to enter into a contract of marriage and live together as man and wife, and that each of them was competent to enter into such a contract, and that in pursuance of such agreement they did live together as man and wife for a number of years and were so living at the time of the death of John T. Hill, and that they did hold themselves out to the public as man and wife and were generally so considered?" The jury's answer was "Yes."

There were no requests by either party for the submission of additional issues nor for explanations or definitions. It will be observed that the submitted issue was in substantially the identical language of that part of Annie P.'s plea in intervention quoted by us above.

Baker, the undertaker, Sidney, Albert and Clarence Hill and Mary Davis, filed a motion for judgment notwithstanding the verdict, in which they claimed as grounds therefor that they had shown the Hills and Davis were the only heirs of deceased and entitled to the proceeds of the policy and had assigned an interest therein to Baker; that Annie P. Conner designated as Annie P. Hill was not related to insured by blood or marriage and therefore had no insurable interest in the life of deceased. The motion was overruled by the court.

Annie P. Hill moved the court for judgment on the verdict and it was granted. The court entered judgment on the verdict, in which he found as a fact that a common law marriage existed between insured and Annie Pearl Hill at the time of the death of the insured and for several years prior thereto; that Annie P. had an insurable interest in the life of the insured at the time the policy was issued. There is a further finding in the judgment that Annie P. had theretofore made a valid assignment of the proceeds of the policy to Mays & Mays, attorneys, and that the attorneys are entitled to receive the proceeds of the policy already paid into the treasury of the court, except for the amount of an attorney's fee awarded by the court to the attorney for the insurance company. The judgment continues in the usual manner to decree a recovery of said amount by Mays & Mays, attorneys, less the fee allowed the insurance company's attorney. Motion for new trial by Baker, Sidney, Albert and Clarence Hill and Mary Davis, was timely filed and overruled by the court, and they have appealed.

Points of error Nos. 1, 2 and 3 relied upon by appellants are: (1) Error of the trial court in overruling their motion for an instructed verdict; (2) error of the court in submitting the charge to the jury over their objections, and (3) error of the court in overruling the motion for judgment non obstante veredicto. These points are discussed in the brief as a group and will be so treated by us.

**282**

■ Point One complaining because the court refused to instruct a verdict for appellants is overruled on the settled law that where there is a conflict in the material fact questions for determination, the jury must decide it. To authorize an instructed verdict the testimony must be such that there is no room for ordinary minds to differ as to conclusions to be drawn from it. 41 Tex.Jur. 939, §§ 168, 169, 170; Woods . v. Townsend, Tex.Sup., 192 S.W.2d 884. One test laid down is: If there is any evidence of probative value, it must be construed in the light most favorable to the party and against the motion for an instructed verdict, and in so construing it, all adverse testimony is left out of view. City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652; Burroughs v. Smith, Tex.Civ.App., 294 S.W. 948, writ refused; Texas Emp. Ins. Ass'n v. Ferguson, Tex. Civ.App., 196 S.W.2d 677.

■ Third point complaining because the court refused to enter judgment on appellants' motion non obstante veredicto is also overruled, for the reason that in such cases as this, where only one special issue is submitted, the motion would not be granted unless it would have been proper for the court to have given a summary instruction in the first place. Rule 301, Texas Rules of Civil Procedure. Under authorities above cited no instructed verdict for appellants should have been given.

■ Second point presents what we consider the controlling question in this appeal. It reads: "Error of the court in submitting charge to the jury over appellants' objections." We have already quoted the only issue submitted. The substance of the objections urged by appellants to the charge was, (1) The real element of a common law marriage is not included in said question, that is, "that (did) Annie Pearl Conner and John P. (T.) Hill ever at any time agreed (agree) with each other to become man and wife." (Parenthesis ours.) And (2) Because there is no evidence that a common law marriage existed, the evidence being that up to the very time of John T. Hill's death the said Annie P. testified that she continued to request him to marry her.

There are further references to the testimony in the exception.

The special issue as submitted may not have been all that could be desired in the instant case, but paraphrasing the question and answer, the jury found that these two Negroes were each competent to and agreed to enter into a contract of marriage and live together as man and wife, and pursuant to said agreement they did live together as man and wife for a number of years and were so living at the time of the death of John T. Hill and that they did hold themselves out to the public as man and wife and were generally so considered. We think the issue as submitted embraces substantially the inquiry appellants contend it did not contain.

■ This brings us to a consideration of whether or not the evidence was sufficient to support the verdict rendered by the jury. Applicable here is the settled rule, often repeated by the courts; we venture to quote it again: "If, disregarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party (appellees here) and indulging every legitimate conclusion that is favorable to him (them) a jury might have found in his (their) favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex.Jur. 910, sect. 410, and cases cited in footnote.

■ Bearing in mind the above rule, we shall refer to at least some of the testimony which we believe supports the verdict. The policy of insurance on the life of John T. Hill, deceased, named Annie P. Hill (without reference to the relationship) as beneficiary; the insured furnished the name of the beneficiary to the agent who took the application for insurance; Annie P. was formerly Annie P. Conner, and but for taking the name of insured as "Annie P. Hill" by virtue of marriage she would have remained Annie P. Conner. This much to indicate John T.'s construction of their relationship. Annie P. testified without objection by appellants substantially that both she and John T. had been divorced from their last spouses and neither had a legal husband or wife prior to 1941 when they

agreed to live together as husband and wife; they continued to live together in that way under the agreement, until John T. died; she said she knew about what was called common law marriages. She also gave a great deal of testimony about having kept the home, cooking the food, mending his clothes, making bills at various places in the name of both John T. Hill and herself as Annie P. Hill; that John T. introduced her to the neighbors as his wife and arranged at certain stores for her to buy goods and make bills in their names; that they held themselves out to the public as man and wife. There is undisputed testimony by some of their colored neighbors to the effect that they were introduced to Annie P. by John T. as his wife and that they were so regarded by their acquaintances and that all their neighbors knew they were living together just as would any other married couple.

 Appellants procured from her on cross examination that she had frequently requested John T. to marry her, and she had stated substantially the same on direct examination; that he had sometimes agreed to do so but at other times had declined, saying that he had been married and that it failed; she also said that both she and John T. knew they were not "married." With her expressed knowledge of the law of common law marriages, it is clear from the whole record that she was not entirely satisfied with that form and wanted him to "marry" her, evidently in a ceremonial way, for she testified that she thought she was just as much married to John T. (in the way they were living under their agreement which she had related) as if a minister had so declared them. In response to a question she said she understood a common law marriage to be, "When you are not married by a preacher or Justice of the Peace." She admitted that she had joined the church and a lodge during the time she and John T. were living together and that she joined as Annie Pearl Conner, "Because we were not legally married and quite a few of them told me I could not come in under a name which would not be true."

 All this may reflect that, as she contends she was using John T. Hill's name as they had agreed, and would have joined these institutions as Annie P. Hill but for the fact that "quite a few" knew they were not "legally" married; hence she enrolled as Annie Conner. A church or lodge may have a law, rule or regulation which does not recognize common law marriages, but they are not controlling upon the courts. Until our laws are changed, whether such laws meet universal approval or not, the common law married status is just as legal as a ceremonial marriage. She further testified on cross examination that everybody in the neighborhood and all the white people she worked for, knew her as Annie Hill. As before indicated by us, these apparent conflicts in the testimony were before the jury and they were resolved by the verdict in favor of Annie P.'s contentions. Appellate courts may not substitute their own opinions for those of the jury in such matters, even though they might have decided different from what the jury did, if the matter had been left to them in the first instance. Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824.

It is argued by appellants, in effect, that when Annie P. testified that she knew she was not "married" and had tried to get John T. to "marry" and he refused, she injected into the case an insuperable barrier to her contention that they had entered into an agreement or contract of common law marriage.

In support of this contention, appellants cite and rely upon Schwingle v. Keifer, 105 Tex. 609, 153 S.W. 1132. To read that opinion is to discern its distinction from the one at bar. In the cited case, the parties had agreed that "They would live together as husband and wife so long as they desired, but that either could dissolve the marriage at any time." It was held that the quoted provision of the agreement precluded its construction as a common law marriage. There is no such condition or proviso in the agreement between the parties here.

 Appellants also cite and rely upon Grigsby v. Reib, 105 Tex. 597, 153 S.W.

1124, L.R.A.1915E, 1, Ann.Cas.1915C, 1011. We see nothing in that case helpful to appellants. The court wrote at length and with much logical force upon the necessity of parties living and cohabiting together as husband and wife after a purported agreement to enter into the common law marriage relation, before such a contract or agreement ripens into the marital status. That question does not arise in the instant case, for it must be admitted that, irrespective of the nature of the agreement to become husband and wife, they did live and cohabit together, evincing the fulfilment and consummation of such agreement as they had in the beginning of the assumed status. It is true that Annie P. did not testify in so many words that they agreed between themselves that the common law marital relation should continue to exist so long as they both should live, but it remains established that they did continue this type of marital status until John T.'s death.

Texas Employers' Ins. Ass'n v. Soto, Tex. Civ.App., 294 S.W. 639, writ dismissed, involved compensation insurance on the death of an employee. The common law wife asserted her rights as such and at a trial before a jury, the court submitted a single issue, substantially in the language of that submitted in the instant case. The verdict was favorable to claimant. It was there insisted, as it is in this case, that the testimony was insufficient to warrant the submission of the issue. Much of the testimony is given in the opinion and is typical of that before us. It was held to be sufficient and the judgment was affirmed.

In Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W.2d 229, it was held that it frequently happens in common law marriages that the marriage, which of course includes the agreement to marry, is proved by circumstances, technically known as cohabition. That, proof of living together under the same name, introducing each other as husband and wife respectively, recognizing their children and in many other respects tending to show their marital status, is sufficient to prove a marriage.

The conflicts in the testimony presented by appellants will not suffice to destroy the credibility given by the jury to witnesses and the weight of their testimony. We are forced to the conclusion that a jury issue was raised and there is testimony of probative value sufficient to support the verdict rendered.

A common law marriage is recognized by our laws as a legal marriage. The parties to such marriage are husband and wife and their legal status is that of married persons; their children are legitimate, they may acquire and own community property and may enjoy homestead and family exemptions. 28 Tex.Jur. 717, sects. 20 and 21; Speer's Marital Rights, 3rd Ed., Sect. 20 et seq. There can be no question of the insurable interest in the life of John T. Hill by Annie P. if she was his common law wife, as in effect found by the jury verdict.

Fourth Point assigns error of the court in awarding to Mays & Mays judgment for the proceeds of the insurance policy then in custody of the court. It was proved and undisputed that Annie P. Hill, the beneficiary named in the policy, had, after the death of insured, executed and delivered to a member of the firm of Mays & Mays a written assignment of her interest in the policy. Viewing the record as we do, we see no error in their recovery.

Fifth Point assigns error of the court "In finding as a fact that Annie P. had an insurable interest in the life of John T. Hill because of expectation of continued benefits from the said Hill."

In the judgment entered, the court recited the special issue submitted and the jury's answer thereto, and that from the issue and its answer he found that a common law marriage existed between John T. Hill and Annie Pearl Hill for several years prior to John T. Hill's death and at the time of his death, and that Annie P. had an insurable interest in his life at the time the policy was issued, and that she had a reasonable expection of continued pecuniary benefits from John T. Hill during his lifetime.

The judgment was a proper one based upon the theory, presented by the

pleadings and proof, that Annie P. was the common law wife of the insured. Although the court made additional findings of fact in the judgment, they could not add anything to the judgment based on the verdict of the jury. Annie P. by her petition of intervention apparently sought recovery by separate allegations that because John T. Hill had for a long time paid her bills, and bestowed many pecuniary benefits upon her, she could reasonably expect him to continue to do so and therefore had an insurable interest in his life. There was plenty of testimony to support the pleading but no issue was submitted to the jury upon that theory of the case, and none was requested by her. She waived that theory of her case. Rule 279, Texas Rules of Civil Procedure.

The immaterial findings of fact recited in the judgment do not militate against the validity of the judgment entered upon the verdict; those findings may be treated as surplusage.

All assigned errors are overruled and the judgment is ordered affirmed.