**William H. HUGHES, Appellant,**

v.

**Charles A. DAUGHERTY, Appellee.**

**No. 3415.**

Court of Civil Appeals of Texas. Waco.

Dec. 28, 1956.

Rehearing Denied Jan. 17, 1957.

Kelley, Looney, McLean & Littleton, Edinburg, for appellant.

Sawnie B. Smith, R. A. Oxford, Edinburg, for appellee.

McDONALD, Chief Justice.

This is a trespass to try title suit. Parties will be referred to as in the Trial Court. Plaintiff Daugherty filed suit against defendant Hughes in trespass to try title to approximately 6 acres of land in Hidalgo County. Defendant pleaded not guilty and pleaded a contract for purchase of the property and prayed for a specific performance of such contract. After conclusion of the evidence the case was withdrawn from the jury, and the court rendered judgment without the jury, awarding title and possession of the property to plaintiff. Defendant filed motion for new trial, which was overruled, and defendant appeals.

A statement is necessary. On *21 August 1951* defendant, who lives in Hidalgo County, wrote plaintiff, who lives in the state of Michigan: "I am wondering if you would like to rent your land in Engelman Gardens (Hidalgo County), and if so I would like very much to have it." Plaintiff replied: "I am not interested in renting but would sell for $250 an acre." Defendant, on *30 August 1951*, wrote plaintiff offering plaintiff "$250 per acre for the land on the basis of ¼ cash and the balance in three equal annual installments." Plaintiff on *5 September 1951* replied to defendant: "I will sell for $250 per acre, but for cash only." Defendant on *8 September 1951* telegraphed plaintiff: "Accept your offer of $250 per acre cash. Mail papers to Elsa State Bank and Trust Company."

■ Thereafter plaintiff employed lawyer Sidwell in Michigan to represent him in connection with the matter and authorized lawyer Sidwell to prepare a deed and send same, together with two abstracts that he had re the land, to the Elsa State Bank. The deed, although in Michigan form, is valid and sufficient under Texas law to convey that which it purported to convey, which was fee simple title to the property, to defendant, *"subject to reservations, restrictions, and agreements of record."* On *17 September 1951* lawyer Sidwell forwarded the abstracts and deed to the Elsa State Bank with instructions to deliver to defendant upon receipt of defendant's check for $1,375. Lawyer Sidwell likewise wrote defendant what he had done. Defendant thereafter picked up the abstracts and took them to his brother, a lawyer, for examination. Correspondence thereafter ensued between defendant and plaintiff to get plaintiff to have the abstracts brought to date, which was done. Defendant's attorney examined the abstracts and found unreleased liens for orchard care in favor of Engelman Gardens. On *13 December 1951* defendant's attorney wrote lawyer Sidwell about this. Plaintiff sent all required releases, except one which had never been executed by Engelman Gardens. On *21*

*January 1952* defendant's attorney wrote lawyer Sidwell that he was trying to get the last required release from Engelman Gardens himself and had been promised same. On *7 February 1952* plaintiff asked lawyer Sidwell to request the Elsa State Bank to return his deed and abstracts, which lawyer Sidwell did. On *11 February 1952* the Elsa State Bank replied to lawyer Sidwell, stating that *defendant Hughes* advised them that he had obtained the release from Engelman Gardens and was ready to close the sale. On *13 February 1952* defendant's lawyer sent lawyer Sidwell a new deed prepared by him, which was a straightout Texas form warranty deed containing no restrictions whatever on the title to the property (even though the plaintiff did not own ⅟₁₆ of the minerals which had been excluded in the deed from Engelman Gardens to plaintiff), and requested lawyer Sidwell to have plaintiff execute same. Lawyer Sidwell sent the *new* deed to plaintiff requesting further instructions. On 18 February 1952 plaintiff telegraphed the Elsa State Bank as follows:

*"Don't like Hughes deed and 5 months stalling. Return my deed and abstract immediately."*

The bank returned plaintiff's deed and abstract on 21 February 1952.

After defendant learned of the foregoing he filed an affidavit of "Notice of his Superior Equitable Title to the Land" in the Hidalgo County Deed Records, and sent lawyer Sidwell a copy thereof. Plaintiff thereafter filed this trespass to try title suit.

As above noted, the deed from Engelman Gardens to plaintiff, which is in evidence, reserved from the conveyance a ⅟₁₆ of all minerals and mineral rights under the land, therefore plaintiff did not own ⅟₁₆ of the minerals and could not legally sell or convey same to anyone.

As set forth supra, trial before the court resulted in judgment for plaintiff. Motion for new trial was overruled. Upon request the Trial Court declined to file Findings of

Fact and Conclusions of Law, but did file an order under Rule 325, Texas Rules of Civil Procedure, setting forth grounds for overruling defendant's motion for new trial, which order actually contains certain findings of fact and conclusions of law by the Trial Court. Portions pertinent to this appeal are:

"I.

"The first five numbered paragraphs of such motion contend that the court rendered judgment for plaintiff based upon certain affirmative defenses which were not pleaded and which had to be pleaded, and hence such ruling was in violation of Rule 94, T.R.C.P.

"This contention is rejected because:

"1. It is erroneous to assume that the defendant made out a prima facie case for specific performance which was then defeated by affirmative defenses thereto on the part of the plaintiff. The judgment is based on the failure of the defendant to discharge the burden imposed on him to make out a prima facie case in the first instance.

"2. The court did not base its judgment on unpleaded affirmative defenses; nevertheless had it been necessary, the court could have considered same under authority of Rule 67, T.R.C.P., Lubbock Bus Co. v. Pearson, [Tex.Civ.App.] 266 S.W.2d 439; Reberger v. Reed, [Tex.Civ.App.] 278 S.W.2d 591; Strong v. Garrett, [148 Tex. 265] 224 S.W.2d [471] 473; [National Bankers Life] Insurance Co. v. Ezerneck, [Tex.Civ.App.] 278 S.W.2d 892; and Bednarz v. State, [142 Tex. 138] 176 S.W.2d 562. This is especially the applicable rule in this case because the evidence in each instance raising such issues was evidence that the defendant himself offered.

"II.

"1. The remainder of the motion deals with the alleged failure of plaintiff to tender good title (because of alleged defects in the title and insufficient form of conveyance), the matter of the time for performance of the contract, and an enumeration of legal and equitable reasons for granting defendant the relief sought.

"The ground for the ruling requires a recitation of some of the facts pertinent thereto:

"The owner of the land, plaintiff, was a nonresident, living in Michigan; defendant lives in Hidalgo County, Texas. The contract whereby plaintiff was to sell the land to defendant is evidenced by letters and telegrams. The contract is quite meager. It merely provides plaintiff is to convey the land to defendant and that defendant is to pay plaintiff $250 per acre. The contract did not mention the type of deed to be used. The land stood in the name of plaintiff alone. He was married but defendant showed by his evidence the property was not homestead. The evidence showed the property was community property. In September 1952 following immediately after the making of such contract, plaintiff and wife sent to a bank in the community where defendant lived, a deed with instructions that same be delivered to defendant upon payment of the agreed consideration. This deed, together with the instructions, remained in such bank until February 1952, when plaintiff demanded its return. The deed contained every provision necessary to cause it to be a good conveyance of real estate under Texas law.

"But defendant demanded, as a prerequisite to performance by him, not only a deed upon a Texas form, but further a deed jointly signed and acknowledged by the husband and wife * * *

"The Alleged Defect In Title: Defendant seeks to justify his delay in performance by citing the so-called 'de-

fect' in title. Such contention is overruled because:

"1) After such alleged defect had been cured by release, defendant continued to refuse plaintiff's deed and to insist upon a deed upon a Texas form, to be executed and signed jointly by the husband and wife.

"2) Such alleged defect was identified as some character of orchard care and marketing contract. It would seem significant that neither the document nor its contents were placed in the record.

"3) Such instrument was alleged to have been executed some ten years previous to negotiations between these parties. There was no showing it was still in effect, and indications that it may not have been. Defendant wrote plaintiff offering to rent the land, mentioning the cost of removing the trees and stated: 'You no doubt know that all operations on it have been discontinued.'

"4) Where the instrument has been identified and is not the character of document which is known to carry with it a lien the court is not justified in presuming that it must have constituted a defect in the title. The burden was on defendant to establish such fact, if it were a fact.

"Time for performance of contract by defendant: Most cases hold that when a contract for the sale of real estate has been entered and no mention is made of the time to be allowed for performance, the law will write into the contract the provision for 'a reasonable time'; * * *.

"Under the theories adopted by the parties to this case the question of reasonable time is not a controlling issue. Defendant took the position he had no obligation to perform (pay the consideration) until the plaintiff tendered him a deed on a Texas form signed and acknowledged by both the husband and wife. Under this theory he would not be concerned about the time elapsing before he paid the consideration (his only obligation) unless he had been tendered such a deed. His position would be just as strong a year afterward as it was a month afterward.

"From the standpoint of performance by plaintiff, he did continue to tender the deed for a sufficiently reasonable period of time for it to be definitely determined that defendant definitely refused to accept the deed, so that further effort by him to perform was not required * * *."

Defendant appeals, contending:

1) The Trial Court erred in holding *plaintiffs complied with their obligations under the contract,* even though there was no pleading of affirmative defenses filed in reply to defendant's plea for specific performance as required by Rule 94, T. R.C.P.

2) The Trial Court erred in holding that *plaintiffs tendered performance substantially as required of them,* even though there was no pleading of affirmative defenses filed in reply to defendant's plea for specific performance as required by Rule 94, T.R.C.P.

3) The Trial Court erred in holding that *plaintiffs had tendered performance for the period of time required of them,* even though there was no pleading of affirmative defenses filed in reply to defendant's plea for specific performances as required by Rule 94, T.R.C.P.

4) *The Trial Court erred in holding plaintiffs' tendered performance was not accepted by defendant,* even though there was no pleading of affirmative defenses filed in reply to defendant's plea for specific performance as required by Rule 94, T.R.C.P.

5) The Trial Court erred in holding that *defendant insisted upon matters and acts by plaintiff not required of them under the contract,* even though there was no pleading of affirmative defenses filed in reply to defendant's plea for specific performance as required by Rule 94, T. R.C.P.

■ Defendant's contentions on appeal are substantially those made on motion for new trial in the Trial Court and all revolve around the failure by plaintiff to *plead* affirmative defensive matters to defendant's plea for specific performance. This is a trespass to try title suit. Plaintiff has record and legal title. Defendant plead a superior equitable title based on a contract to purchase the land from plaintiff. We think the Trial Court's findings of fact and conclusions of law are supported by the record and constitute a complete answer to defendant's contentions. The plaintiff timely tendered defendant a deed sufficient under the laws of Texas to convey the land to defendant. Defendant did nothing for some five months, and then advised plaintiff he refused to accept such deed on the assigned ground that "it did not comply with Texas requirements", and presented plaintiff with another deed which included mineral rights not owned by plaintiff and which required plaintiff's wife to sign and acknowledge, and contained other provisions not called for in the contract. Plaintiff's contract with defendant was very meager. Plaintiff merely agreed to sell such land and such title as he owned to defendant for $250 per acre cash. No further details were covered in the contract. Plaintiff complied with the foregoing contract, and did all that was required of him under such contract, by sending a deed to the Elsa State Bank, sufficient under the laws of Texas to convey to defendant his complete interest in the property. The defendant refused to accept the deed tendered him, and demanded that plaintiff execute another deed which contained further and additional requirements which were not included in plaintiff's and defendant's contract. There was no meeting of the plaintiff's and defendant's minds on the matters defendant additionally contended for—hence they were no part of plaintiff's and defendant's contract. Plaintiff complied with the only contract the minds of the parties ever met on, and defendant not only refused to accept such compliance or to comply with his part of said contract (payment of the purchase price), but demanded additional performance by plaintiff as a condition of his (defendant's) performance and payment of the purchase price.

In view of the foregoing it is our view that the Trial Court did not commit reversible error or abuse its discretion in refusing defendant's prayer that plaintiff be required to convey the whole of the land to defendant.

All of defendant's points have been carefully considered and are overruled.

The judgment of the Trial Court is affirmed.

HALE, J., not participating.