Gertrude GROGAN et al., Appellants,

v.

Lloid HENDERSON et al., Appellees.

No. 7028.

Court of Civil Appeals of Texas.

Texarkana.

March 18, 1958.

Rehearing Denied May 6, 1958.

Florence, Florence & Garrison, Lowell C. Holt, Gilmer, Woodrow H. Edwards, Mt. Vernon, for appellants.

Smead & Harbour, Longview, Hollis Massey, Columbus, for appellees.

DAVIS, Justice.

This is a suit by the surviving heirs of Lucy Killingsworth Henderson, deceased, against their father, E. H. Henderson, and Gertrude Grogan, a widow, to set aside certain deeds executed by E. H. Henderson to said heirs, and certain deeds from E. H. Henderson to Gertrude Grogan; also against E. H. Henderson for an accounting and settlement of the estate of Lucy Killingsworth Henderson, deceased. Trial was to a jury and judgment was rendered in favor of the heirs from which Gertrude Grogan has perfected her appeal.

### History.

E. H. Henderson married Lucy Killingsworth on December 19, 1902. At the time of such marriage he owned a 70-acre tract of land situated in Gregg County. Prior to November 24, 1906, E. H. Henderson sold the 70-acre tract of land for $700. He then purchased from Mary Williams a tract of land purportedly containing 200 acres, which was discovered by a subsequent survey to contain 213.808 acres, and he applied the $700 received for the 70-acre tract of land on the purchase of the Williams tract and executed a note to his father for the balance of the purchase money. There is some discrepancy in the evidence as to the amount of the note. A consideration of $950 is recited in the Williams deed, yet E. H. Henderson testified that the total purchase price was $1,000. According to the undisputed and uncontradicted testimony, the note was subsequently given to E. H. Henderson by his father as a gift. This tract of land was used as a homestead by him and his wife.

On June 23, 1922, E. H. Henderson and his brother, Charles T. Henderson purchased from their father a 120.4-acre tract of land for a total consideration of $3,300. E. H. Henderson paid $650 in cash as down payment for his half interest in the property, and executed a note for $1,000 payable to his father for the balance. No lien was retained against the land to secure the payment of the note. Subsequently, his father died, and he received as part of his share of his father's estate the $1,000 note.

Mrs. Lucy Henderson died, intestate, in March of 1943. No administration was had upon her estate, and her husband continued to occupy and use the 213-acre tract until about 1954. At the time of the death of Mrs. Henderson, there was less than $100 in community funds on hand. There was approximately 25 head of cattle, some 10 or 12 sheep, a horse, a mule, a wagon and some plow tools. After the death of Mrs. Henderson, E. H. Henderson sold all the personal property. The evidence is extremely vague as to what he received for the cattle. There is some evidence in the case that some of the cows were worth as much as $150 each, but there is no evidence as to how many of such cattle were worth that much. The only actual proof as to how much was paid to him for cattle was about $400. The uncontradicted testimony shows that he sold all the sheep for $100. The wagon and farm tools brought $110. If there is any direct testimony as to how much was received from the sale of the horse and mule, we have overlooked it. The plaintiffs alleged in their petition that E. H. Henderson had

sold some $7,000 worth of timber from the two tracts of land subsequent to the death of Mrs. Henderson, but there is barely enough proof to show the sale of approximately $1,900 worth of timber after the death of Mrs. Henderson and prior to the filing of this suit.

In 1949, one Ed Barnett of Longview, Texas, executed a note to E. H. Henderson for $2,500. On September 1, 1953, the $2,500 note was renewed in the sum of $3,368, which represented the unpaid balance of both principal and interest. Subsequently, Ed Barnett paid to E. H. Henderson $1,500 on the note, and on December 11, 1954, E. H. Henderson sold the balance of the note to Mrs. Gertrude Grogan for the sum of $1,800. This represented a discount of about $93 on the principal and accrued interest on the note.

On May 22, 1953, E. H. Henderson purchased three fire insurance policies in the total sum of $11,000 upon a house and furniture situated on the 213-acre tract of land. E. H. Henderson was named as sole beneficiary in the policy. On June 9, 1953, the house and furnishings were destroyed by fire. A claim was filed on the policies and a settlement was made. Henderson was paid the sum of $8,300, which sum included a settlement for the loss plus a refund of the unearned insurance premiums. The total amount of premiums was $329.60. There is no pleading or evidence that the premiums paid for the policies were paid out of community funds.

In the spring of 1954, E. H. Henderson caused a survey to be made of the 213.808-acre tract of land for the purpose of partitioning the same between himself and his children. On June 30, 1954, E. H. Henderson conveyed by warranty deeds to Lloid Henderson 49.89 acres; to Edith Lucille Henderson 49.88 acres; and to Della D. Melton 49.90 acres in separate tracts out of said 213-acre tract, leaving 63.63 acres. These deeds were mailed or delivered to the respective children, but were not recorded.

On July 28, 1954, E. H. Henderson executed similar deeds to his children which he contends was for the purpose of correcting the description of the land, but for the same amount of acreage, filed them for record in the Deed Records of Gregg County and had them mailed to the respective grantees.

On September 2, 1954, E. H. Henderson conveyed to Gertrude Grogan the remaining 63.63 acres of land out of the 213-acre tract for a consideration of $4,000. On December 3, 1954, he conveyed to Gertrude Grogan an undivided one-half interest in the 120.4-acre tract of land for a consideration of $3,000.

On March 9, 1954, E. H. Henderson conveyed to Gertrude Grogan a 50-acre tract of land that he inherited from his father for a total consideration of $4,000. There were no contentions that this was community property, but the sale was shown in an apparent attempt to show fraud on the part of Gertrude Grogan in acquiring the property.

On March 12, 1955, plaintiffs filed their suit in the District Court of Gregg County in which they alleged that after the death of Mrs. Henderson, the timber was sold from the property by defendant for $7,000; defendant received $8,300 insurance on the dwelling and furniture; the cattle and other livestock was sold for $2,000; the collection of the Ed Barnett note in the sum of $3,300; and, they alleged that the partition deeds to them were executed "voluntarily", then they alleged that they were executed under duress of Mrs. Grogan for the purpose of defrauding them of their interest in said property, and also that the defendant Gertrude Grogan had received or taken from the defendant Henderson all the proceeds of the sale of the timber, livestock, insurance, and all the money from the sale of the land defendant had conveyed to the defendant Grogan. They alleged that this was all done by defendant Grogan with full knowledge that the defendant Henderson had not account-

ed to the plaintiffs for their share of the community property.

They prayed that the defendants account to them for all money and property received by them from the community estate of E. H. Henderson so that the equities could be adjusted; for partition of the community estate; that all the deeds hereinabove set out that were executed by E. H. Henderson be cancelled and declared void; and for judgment against the defendants, jointly and severally, for any balance that might be due plaintiffs in said accounting after setting aside to them their community real estate.

Trial was to a jury and the following special issues were submitted by the court and answered by the jury as indicated:

"*Special Issue No. 1:* Do you find from a preponderance of the evidence that at the time the Defendant, E. H. Henderson, executed a deed to Gertrude Grogan on the 63.63 acres, the said Gertrude Grogan had knowledge that E. H. Henderson had not accounted to the children of Lucy Henderson for their interest in the community estate of E. H. Henderson and Lucy Henderson?

"Answer: 'She did have knowledge' or 'She did not have knowledge.'

"*Answer:* She did have knowledge.

"*Special Issue No. 2:* Do you find from a preponderance of the evidence that at the time the Defendant, E. H. Henderson, executed a deed to Gertrude Grogan on the undivided ½ interest in the 120.4 acres, the said Gertrude Grogan had knowledge that E. H. Henderson had not accounted to the children of Lucy Henderson for their interest in the community estate of E. H. Henderson and Lucy Henderson?

"Answer: 'She did have knowledge,' or 'She did not have knowledge.'

"*Answer:* She did have knowledge.

"*Special Issue No. 3:* Do you find from a preponderance of the evidence that the money received by E. H. Henderson since the death of his wife, Lucy Henderson, from the sale of timber from the 213 acre tract and the 120.4 acre tract, from the fire insurance proceeds, from the sale of livestock and implements and on the Ed Barnett note exceeds the value of the 213 acre homestead tract and an undivided ½ interest in the 120.4 acre tract?

"Answer: 'It does exceed the value of such land' or 'It does not exceed the value of such land.'

"*Answer:* It does not exceed the value of such land.

"In connection with the foregoing Special Issue No. 3, you are instructed that any property which E. H. Henderson acquired by gift or descent from his father would constitute separate property of E. H. Henderson. The said E. H. Henderson would have the right to reimburse himself out of the community funds for the value of separate lands and funds in any accounting with his children.

"*Special Issue No. 4:* Do you find from a preponderance of the evidence that the value of the three tracts of land out of the 213 acre tract which E. H. Henderson conveyed to his children in 1954 is less than the value of the 63.63 acre tract and the value of the undivided ½ interest in the 120.4 acre tract?

"Answer: 'The three tracts are of less value,' or 'The three tracts are not of less value.'

"*Answer:* The three tracts are of less value.

"*Special Issue No. 5:* From a preponderance of the evidence, how much money do you find E. H. Henderson has received since the death of his

wife, Lucy Henderson, from the following sources:

"a. From the sale of timber from the 213 acre tract and the 120.4 acre tract;

"b. from the fire insurance;

"c. from the sale of livestock and implements; and

"d. from the Ed Barnett note?

"Answer by stating the amount in dollars and cents, if any.

"*Answer:* $17,000.00.

"*Special Issue No. 6:* Do you find from a preponderance of the evidence that the 213 acre tract was purchased partly from separate funds of E. H. Henderson?

"Answer: 'Yes' or 'No.'

"*Answer:* Yes.

"If you have answered special issue 6 'yes' then answer the following issue, otherwise you need not answer the same.

"*Special Issue No. 7:* What part, if any, do you find from a preponderance of the evidence of the total purchase price of the 213 acres was paid out of the separate funds of E. H. Henderson?

"Answer in percentage, if any, of the total.

"*Answer:* 64%.

"*Special Issue No. 8:* Do you find from a preponderance of the evidence that the 213 acre tract was purchased entirely on the credit of the community estate of E. H. Henderson and wife, Lucy Henderson?

"Answer 'Yes' or 'No.'

"*Answer:* No."

Numerous exceptions were leveled to the court's charge by the defendants; none were made by the plaintiffs. Neither did plaintiffs request any additional special issues.

Upon return of the verdict, all parties filed motions for judgment on the verdict. The motion of the defendants who filed a joint motion was denied and the motion of the plaintiffs was granted. The trial court in rendering judgment specifically made additional findings of fact that:

· (a) Plaintiffs and defendants are the sole owners of the 213-acre tract of land and an undivided ½ interest in the 120.4 acres of land;

(b) The 1954 deeds from E. H. Henderson to plaintiffs should be cancelled and declared void;

(c) The 1954 deeds from defendant E. H. Henderson to defendant Gertrude Grogan to the 63.63 acres out of the 213-acre tract and an undivided ½ interest in the 120.4-acre tract should be cancelled and declared void as against the plaintiffs;

(d) Said lands are the community property of E. H. Henderson and his deceased wife, Lucy Henderson, and are now owned by the parties to this suit in the following shares: ⅙ by Lloid Henderson; ⅙ by Edith Lucille Henderson; ⅙ by Della D. Melton; and ½ by E. H. Henderson;

(e) E. H. Henderson is entitled to a credited of $700 and $1,000 out of the sum of $17,000 found by the jury to have been received by him since the death of his wife, which $700, and $1,000 the court found, in addition to the jury finding, was contributed by Henderson out of his separate funds toward the purchase of said lands; and

(f) All of said property is susceptible to a partition in kind.

Defendant Gertrude Grogan has duly perfected her appeal and brings forward five points of error.

## Opinion.

By Point 1 she complains of the action of the trial court in rendering judgment for plaintiffs, contending that they received, before suit, more than they were entitled to from the estate of Lucy Henderson, deceased, and that her contention is supported by the uncontradicted evidence, as well as the finding of the jury.

To this contention appellees counter that the 213-acre tract was purchased as a homestead and that the statutory presumption is that such tract belongs to the community and that the burden was upon defendants to plead and prove that any interest in such property belonged to the separate estate of E. H. Henderson, and contend that such burden was not met. (Appellees in their brief have nine "counter-points" which they designate as "points.")

■ We are confronted with an extremely confusing situation. Plaintiffs pleaded fraud as the chief basis of their lawsuit. No issues were submitted or requested for the purpose of securing a finding of fact establishing fraud. This is understandable, because the evidence is insufficient to raise an issue of fraud. Plaintiffs asked some questions by which they would have established fraud if they had received favorable answers. But, a question which inquires if an act was done, to which there is an emphatic denial, constitutes no evidence at all of the act sought to be proved. There is some evidence relative to certain bank deposits by defendant Gertrude Grogan that might constitute an inference from which a presumption might be drawn that she did receive some of the insurance money that defendant Henderson received when the house and furniture burned. But, in view of our holding subsequently noted relative to the insurance, that would not affect the land involved. It is true that neither of the defendants pleaded as an affirmative defense that any sums of the purchase price of the lands involved were paid out of the separate property or funds of defendant E. H. Henderson, or

plead that any of it was received by him as a gift. But, these issues were openly tried before the court and jury without any objection whatever and the issue inquiring as to at least part of the property being paid for out of the separate funds was submitted to the jury without any objection or exception whatever on the ground that the affirmative defenses had not been pleaded. No objection being made upon the evidence on the ground that there was no pleading to support it, such affirmative pleading was waived, and the issue of the failure of defendants' pleadings cannot be raised for the first time on appeal. The following is a question that was submitted to the subcommittee on interpretation of our Rules of Civil Procedure and its answer thereto, (8 Tex. Bar Journal 33):

"Rules 67, 274, 277, 279.

"Question: Rule 67 reads 'When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings * * * provided that written pleadings, before the time of submission, shall be necessary to the submission of special issues, as is provided in Rules 277 and 279.' Does this rule mean that it is necessarily reversible error to submit special issues when they have not been raised by the written pleadings as provided in the above rule and in Rules 277 and 279?

"Answer: *No*. Rule 274 was amended at a later date than the date upon which the above requirements were promulgated. This later amendment reads 'Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, *shall be deemed waived unless specifically included in the objections.*' This amendment is contained, it will be recalled, within a rule which regulates objections to the charge of the court.

So that the opinion of the sub-committee is that issues submitted without written pleadings to support them will not be erroneous upon that ground unless objection upon that ground is made." (Emphasis added.)

This interpretation was followed by our Supreme Court in Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562. According to Shepard's Southwestern Reporter Citations, this opinion of our Supreme Court since has been cited with approval no less than 22 times, the latest case shown being Hughes v. Daugherty, Tex.Civ.App., 297 S.W.2d 274, wr. ref., n.r.e.

■ Unquestionably, plaintiffs waived any theory or right to recovery based upon fraud by failing to make sufficient proof and request proper issues thereon. Baker v. Mays & Mays, Tex.Civ.App., 199 S.W. 2d 279, wr.dis.; Outhier v. Parker, Tex. Civ.App., 207 S.W.2d 237, nwh; Blaine v. Blaine, Tex.Civ.App., 207 S.W.2d 989, nwh.

■ Not only was the issue relative to the separate funds of Henderson tried without objection, but also the issue as to the value of the property was tried. The jury having answered favorably to defendants on the issue of the separate funds, the trial court should not have disregarded the findings. Further, in view of the admission of the evidence and the submission of the issue as submitted, Special Issue No. 4 should not have been submitted inquiring as to whether or not the value of the three tracts of land received by the plaintiffs was more or less than the value of the one tract reserved by E. H. Henderson. The issue should have been submitted following Special Issue No. 8, and then should have inquired whether or not the value of the three tracts of land was of more or less value than the total interest of plaintiffs in and to both tracts of land. The trial court properly submitted Special Issue No 7 inquiring as to the percentage of the separate funds of

defendant Henderson that were used to purchase the 213-acre tract because it has long been the established law in Texas that such an acquisition of property has the effect of creating a kind of tenancy in common between the separate and community estates, each owning an interest *in the proportion* that it supplies the consideration. Such was the holding in an opinion by Judge Hickman, now Chief Justice of our Supreme Court, in the case of Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881, 883, in which Mr. Hickman said:

"* * * It would follow, it seems to us, as a matter of course, that, since a community obligation constituted a part of the purchase price, the community estate acquired a part interest in the lots. It seems to be the rule in some jurisdictions that property purchased partly with community funds and partly with separate funds of one of the spouses falls into the community, but in Texas it has long been established that such an acquisition has the effect of creating a kind of tenancy in common between the separate and community estates, each owning an interest in the proportion that it supplies the consideration. The rule is well stated in 31 C.J. p. 40, § 1132, in this language:

" 'Generally purchases made partly with separate and partly with community funds will be community property to the extent and in the proportion that the consideration is furnished by the community, the spouse supplying the separate funds having a separate interest therein to the amount of his or her investment, the tenure of the whole property in such cases being by way of a sort of tenancy in common between the separate and community estates. * * *'

"A long list of Texas cases are cited in support of the text and it is unquestionably a correct general state-

ment of the established rule in this jurisdiction.

"We quote from the opinion of Justice Williams written while he was a member of the Court of Civil Appeals in the case of Goddard v. Reagan, 8 Tex.Civ.App. 272, 28 S.W. 352, as follows:

" 'It also appeared that of $1,000, which was the consideration paid for the 200-acre tract, $700 was the money of the wife. The other $300 was borrowed from one Roach, for which the joint note of Reagan and wife was given, and the money so obtained was paid for the land. Some four or five weeks after the land had been thus paid for and acquired, the note given to Roach was paid out of funds of the wife, which had been received from Tennessee. It is claimed that from these facts it appears that the whole of the consideration for the 200 acres was paid with the wife's separate means. But this contention is contrary to the decisions of the supreme court. The money borrowed from Roach was community funds; the note given to him was a community debt, and when paid out of the wife's money became, perhaps, a claim in her favor against the common estate, or against her husband. The title to the land had, however, been acquired, and its status was fixed at the time of its acquisition. As $300 of the price paid for it was common funds, and $700 the separate funds of the wife, the equitable title in a three-tenths interest vested in the community estate, and seven-tenths in the wife. Heidenheimer v. McKeen, 63 Tex. 229; Parker v. Coop, 60 Tex. [111] 117. The court below held the whole of the 200 acres to have been the separate property of the wife, and for this the judgment must be reversed.' "

See also, Huston v. Colonial Trust Co., Tex.Civ.App., 266 S.W.2d 231, wr. ref.,

nre; Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328; Hartman v. Hartman, Tex.Civ.App., 253 S.W.2d 480, nwh; Lindsay v. Clayman, 151 Tex. 593, 254 S.W. 2d 777; Speer's Law of Marital Rights in Texas, pp. 458, 489 and 524.

■ Thus, it appears that the separate pro rata interest of Mr. Henderson in and to the 213-acre tract of land is settled. The balance of the interest in said tract being purchased on the credit of the community, it is community property. That, too, is settled. There was no finding of fact as to whether or not the balance of the consideration was paid by gift of a note. If, upon another trial, it should be found to be true that the note was given to Mr. Henderson after the purchase of the property, the amount should be determined and he should be given credit for that amount in the accounting.

■ The interest of the parties in and to the 120.4-acre tract of land is also settled. Appellant admits, and correctly so, that the undivided one-half interest in the 120.4-acre tract of land is community property. It was purchased partly with funds of the community estate and partly on credit. When the father of E. H. Henderson died and he was credited with the payment of the $1,000 note, in the settlement of his father's estate, this entitled him to the $1,000 out of the community estate in the accounting This can be charged against all or any part of the property of the community. It would be difficult to arrive at the value of the community property from the evidence adduced upon the trial. There was some testimony that there was some timber on the land that was worth from $100 to $150 per acre. Some calculations were made as though the entire property was covered with such timber. There is very little, if any, evidence as to the value of the land without the timber. There is some evidence that some of the land has been in cultivation not too long ago, some of it in pasture and some of it in a meadow with-

out any showing whatever as to the number of acres of either. As we see it, it would be impossible, upon such evidence, to arrive at a fair and just value of the property as it now exists. In order for the equities of the parties to be properly adjusted by the authority called upon to do so, these matters should be shown with some degree of certainty.

We also point out that there is insufficient evidence, if any evidence at all, that the property is capable of partition in kind; and, if appellees have not been injured by the voluntary partition by E. H. Henderson, the partition should be permitted to stand. For the errors hereinabove pointed out, Point 1 is sustained.

By Point 2, appellant complains of the action of the trial court in not crediting E. H. Henderson and Gertrude Grogan in any settlement of the estate of Lucy Henderson with the Henderson children, with all the proceeds of the insurance policies on the house and furniture since the contract was a personal one between Henderson and the Insurance Companies. The case of Ditmore Land & Cattle Co. v. Hicks, Tex.Civ.App., 282 S.W.2d 753, 757, modified on another point and as modified, affirmed Tex., 290 S.W.2d 499, is decisive on this point. The Court of Civil Appeals quoted from 46 C.J.S. Insurance § 1140, p. 19, as follows:

"A person who is not either a party to the insurance contract or one for whose benefit it was written is not entitled to a share of the insurance proceeds by the mere fact that he has an insurable interest in the property insured, or has, without obtaining any title thereto, contributed to its purchase or construction. Where different persons have different interests in the same property, the insurance taken by one in his own right and on his own interest does not in any way inure to the benefit of another of such persons."

Point 2 is sustained.

By Point 3, appellant complains of the action of the trial court in not crediting E. H. Henderson and Gertrude Grogan in any settlement of the estate of Lucy Henderson with the Henderson children with all the proceeds of the Ed Barnett note since the money was loaned by Henderson to Barnett long after the death of his wife and was therefore presumed to be the separate money of Henderson rather than community money. We will recall, again, that at the time of the death of Mrs. Henderson there was less than $100 in money on hand belonging to the community estate. The evidence shows that the timber was sold not later than 1945, and only about $1,900 worth of timber sold. The evidence does not show when all the cattle were sold, and the only sales actually shown were after the date of the Barnett note. There was neither pleading nor proof that the community funds of Mr. and Mrs. Henderson went into the Barnett note. The law relative to property acquired after the dissolution of the community is stated in 14–B Tex.Jur. 190, Sec. 11, as follows:

"On the other hand, property acquired by the survivor after the dissolution of the community is presumptively his or her separate property, and the burden of showing a community interest therein rests upon the heirs." Le Blanc v. Jackson, Tex. Com.App., 210 S.W. 687.

In the case of McKenzie v. Grant, Tex. Civ.App., 93 S.W.2d 1160, 1167, wr. dis., the court stated the rule relative to property acquired after dissolution of the community as follows:

"Where property is acquired by the survivor of the community estate after the dissolution of the marriage, it is presumptively the separate property of the survivor, and the burden of proof to show the community interest, and its extent, is upon those as-

serting that it is community property * * *."

There being neither pleading nor proof that community funds went into the Barnett note and six years having passed after the death of Mrs. Henderson until the date of the note, appellees failed to discharge the burden placed upon them. Point 3 is sustained.

■ By Point 4, appellant complains of the action of the trial court in refusing to find that appellees' cause of action as to timber, livestock and implement sales was barred by the two-year statute of limitation. This point is without merit because limitation does not run against a trustee or a cotenant under conditions as exist here, and the law is so well settled that the citation of authorities is deemed unnecessary.

By Point 5, appellant complains of the action of the trial court in submitting Special Issue No. 5 in the form that it was submitted, contending that the multiple items should have been submitted separately. As a matter of convenience, the Special Issue is re-copied and set out as follows:

"From a preponderance of the evidence, how much money do you find E. H. Henderson has received since the death of his wife, Lucy Henderson, from the following sources:

"a. From the sale of timber from the 213 acre tract and the 120.4 acre tract;

"b. from the fire insurance;

"c. from the sale of livestock and implements; and

"d. from the Ed Barnett note?

"Answer by stating the amount in dollars and cents, if any."

Bear in mind that the answer of the jury to this issue was $17,000. In view of our holding as to the insurance and the Barnett note, it is not necessary to the disposition of the case to discuss the question of the proper submission of the issue. There was no dispute about the sum of money received on the insurance policies, and that part of the issue should not have been submitted. Next, there being no pleading nor proof that the Ed Barnett note was community property, that part of the issue should not have been submitted. This leaves the question of partition of the land (whether or not the partition made is fair and equitable), and accounting of funds received from the sale of timber, livestock and implements to be disposed of. The judgment of the trial court will have to be affirmed in part, reversed and rendered in part, and in part reversed and remanded.

Therefore, those parts of the judgment of the trial court adjudging the undivided one-half interest in the 120.4-acre tract of land to be community property and that E. H. Henderson is entitled, in the accounting, to a credit for the $1,000 paid out of his separate estate for the note on said land is affirmed; the part of the judgment finding the proceeds of the fire insurance policies and the Ed Barnett note to be community property is reversed and judgment is here rendered that appellees take nothing as to said items; the part of the judgment decreeing all of the 213-acre tract to be community property is reversed and judgment is rendered fixing the separate interest of E. H. Henderson in the 213 acres in a pro rata amount as evidenced by the $700 down payment of the purchase price out of his separate estate with the total cost thereof to be definitely established (whether $950 as recited in the deed, or $1,000 as testified by Mr. Henderson) upon another trial, and adjudging the remaining portion to be community property; and, the judgment of the trial court in all other respects is reversed and remanded for another trial consistent with this opinion.

### On Motion for Rehearing.

Appellees have filed a lengthy and forceful motion for rehearing, and urge that E. H. Henderson admitted that he told Mrs. Grogan that his children owned ½ interest in the 213-acre tract of land, and refer the Court to a question and answer on pages 57 and 58 of the Statement of Facts; and also contend that Mrs. Grogan testified that she knew that the children owned a ½ interest in the 213 acres and refer to a question and answer of Mrs. Grogan on page 99 of the Statement of Facts. On examination of the testimony referred to, it shows that Mr. Henderson was testifying about the community property of himself and his deceased wife, and in the testimony of Mrs. Grogan, she was testifying about the 50-acre tract which appellees admit was the separate property of E. H. Henderson. Mrs. Grogan did admit that she knew the Henderson children owned a ½ interest in the personal property involved in this suit. The only particular tract of land referred to in this particular testimony of Mrs. Grogan was the 50-acre tract.

Appellees also contend that we erroneously stated that there was barely enough proof to show the sale of approximately $1,900 worth of timber from the land after the death of Mrs. Henderson and prior to the filing of the suit, and contends that on page 142 of the Statement of Facts, the testimony of Lloid Henderson related to the sale of $7,000 worth of "timber." It may have been the intention of Lloid Henderson to so testify, but a careful examination of the testimony shows that he testified relative to one *tract of land* as follows:

"It was a virgin bunch of timber that was left for a home and my Dad told me that he got $2500 for the *tract of land* * * *" (Emphasis added.)

In other testimony regarding another tract of land, Lloid Henderson testified,

on page 142 of the Statement of Facts, as follows:

"The *other tract of land* that I remember was directly north of the home where it had been cut over, that he told me he got $3500 for that tract of land * * *" (Emphasis added.)

This testimony indicates what his father got for "land", not for "timber."

In view of the extremely confusing and complicated record in this case, we have re-examined the record and the authorities, and remain convinced that the case has been correctly disposed of, and the motion for rehearing is overruled.