**Raymond D. BAHR, M.D. and Patricia Bahr, Appellants,**

v.

**Bradley D. KOHR and Vivian E.S. Kohr, Appellees.**

No. 04–98–00136–CV.

Court of Appeals of Texas, San Antonio.

Aug. 26, 1998.

Harry J. Skeins, Jr., Paula K. Williamson, Skeins & Williamson, P.C., Fredericksburg, for Appellant.

Robert Q. Keith, Thomas H. Walston, Keith & Weber, P.C., Johnson City, H. Ritman Jons, Kerrville, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

### Nature of the Case

Raymond D. Bahr, M.D. and his wife, Patricia Bahr (the "Bahrs") appeal a judgment entered in favor of Bradley D. Kohr and his wife, Vivian E.S. Kohr (the "Kohrs"). The Bahrs filed suit against the Kohrs under the Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM.CODE ANN. § 24.001 *et seq.* (Vernon 1987). After a trial to the bench, the court entered a take-nothing judgment in favor of the Kohrs. In their issues presented, the Bahrs argue that the court erred in admitting parol evidence and evidence regarding separate property when only a general denial was filed. The Bahrs also allege that the evidence was factually insufficient to support the court's findings. In their last issue, the Bahrs argue that the court erred by failing to respond to their request for additional or amended findings of fact and conclusions of law.

### Factual Background

On or about March 7, 1987, the Bahrs obtained an agreed judgment in Maryland against Dutchman Hereford Co., and Mr. Kohr in the amount of $200,000. Mrs. Kohr was not a party to that suit. The agreed judgment provided for periodic payments and was secured by a ranch in Montana. On or about June 9, 1988, the Kohrs purchased 268 acres of real property in Gillespie County. The 268 acres was conveyed by a general warranty deed which stated that ten dollars and other good and valuable consideration was paid by grantees, Bradley D. Kohr and wife, Vivian E.S. Kohr. On January 31, 1994 the Bahrs recorded the Maryland judgment with the district clerk of Kerr County. Mr. Kohr executed a deed to Mrs. Kohr on February 10, conveying to her as her separate property, 68 acres of the Gillespie County property. The remaining 200 acres were claimed as a homestead by the Kohrs. The Bahrs then instituted this lawsuit, contending that the transfer of the 68 acres was a fraudulent conveyance because Mr. Kohr had no other assets to satisfy the Maryland judgment.

The only witnesses at trial were Mr. and Mrs. Kohr. The Kohrs testified that the money used to purchase the 268 acres came from Mrs. Kohr's separate property money market account. The trial court made the following relevant findings of fact and conclusions of law:

4. The Kohrs sold the New Jersey farm in 1987 for a considerable profit. The Kohrs partitioned the proceeds of the sale of the New Jersey farm between themselves as each other's separate property. Thereafter, the Kohrs kept their separate proceeds segregated from each other's accounts.

5. Brad Kohr used his proceeds from the sale of the New Jersey farm to pay separate business debts he had incurred.

6. Vivian Kohr deposited her share of the proceeds from the sale of the New Jersey farm into account number 0006421 at Flemington National Bank and Trust Company, in Flemington, New Jersey. The account was in Vivian Kohr's name only and was her separate property or her sole management community property.

The court found that the Gillespie County property was purchased from money deposited in Mrs. Kohr's separate account at Flem-

ington National Bank. Thus, the 268 acres were Mrs. Kohr's separate property and a resulting trust was created in favor of Mrs. Kohr. The court found that the conveyance of the 68 acres to Mrs. Kohr from Mr. Kohr clarified the title to the property and was not a fraudulent conveyance.

At trial, the Bahrs' counsel objected to the testimony concerning the source of funds for the Gillespie County property contending it was inadmissible parol evidence. In their first issue presented, the Bahrs argue that the court erred in allowing parol evidence in contradiction to the express terms of the warranty deed. In their second issue presented, the Bahrs allege that the court erred in admitting the Kohrs' evidence of separate property when only a general denial was filed and an affirmative defense of separate property or separate funds was not pled. The Bahrs also argue that the evidence is factually insufficient to support the court's finding that the Gillespie County property was purchased with the separate funds of Mrs. Kohr. Additionally, the Bahrs argue that the evidence is factually insufficient to show that the defendants had overcome the presumption that Mrs. Kohr made a gift of one-half interest in the property to Mr. Kohr by naming him in the deed. In their last issue, the Bahrs allege that the court erred by failing to respond to their request for additional findings of fact and conclusions of law.

### Parol Evidence

■■■ In the first issue presented, the Bahrs argue that the court erred in admitting parol evidence regarding the source of funds used to purchase the Gillespie County property. The warranty deed recites that both Brad Kohr and wife Vivian Kohr paid consideration for and were granted the Gillespie County property. Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965); Tex. Fam.Code Ann. § 3.003(a) (Vernon Pamph.1998).[1] In order to overcome the presumption, a party claiming separate property must show by clear and convincing evidence that the property is

separate. Tex. Fam.Code Ann. § 3.003(b) (Vernon Pamph.1998). When a spouse uses separate property to acquire property during marriage and takes title to that property in the name of both spouses, a presumption arises that the purchasing spouse intended to make a gift of one-half of the separate funds to the other spouse. *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex.1975); *In re Thurmond*, 888 S.W.2d 269, 273 (Tex. App.—Amarillo 1994, writ denied). This rule is consistent with the principles of trust law concerning purchase money resulting trusts. *Thurmond*, 888 S.W.2d at 273. However, the presumption can be rebutted by evidence of the absence of an intent to make a gift. *Cockerham*, 527 S.W.2d at 168; *Id.*

■■■ The Bahrs argue that in cases where the community property is land evidenced by an unambiguous deed, parol evidence will not be admitted to rebut the presumption of community property. *See Massey v. Massey*, 807 S.W.2d 391, 405 (Tex.App.—Houston [1st Dist.] 1991, writ denied). When a writing is intended as a completed memorial of a legal transaction, the parol evidence rule excludes other evidence of any prior or contemporaneous expressions of the parties relating to that transaction. *Muhm v. Davis*, 580 S.W.2d 98, 101 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The *Massey* case states that "a spouse who is a party to a deed transaction may not introduce parol or extrinsic evidence to contradict the express recitals in the deed without first tendering evidence of fraud, accident, or mistake." *Massey*, 807 S.W.2d at 405 (citing *Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 431–32 (Tex.1970)).

In the *Massey* case, the parties stipulated to the authenticity of two deeds and a promissory note. The express language of these documents, the recitation of consideration and transfers of property, were bargained-for exchanges. The husband wanted to offer the testimony of his mother and brother that the transactions were actually intended as gifts but were made to look like transactions to avoid gift taxes. The court did not allow

1. Former Tex. Fam.Code Ann. § 5.02 (Vernon 1993).

the testimony under the parol evidence rule and the court of appeals affirmed. However, the husband was not attempting to introduce evidence of the source of funds used for consideration to rebut the presumption of community property. He was attempting to deny the existence of any consideration, even though the documents contained express recitals of consideration. We find a distinction between allowing evidence of the source of consideration to rebut the presumption of community property and denying that there was any consideration, in direct contrast to the recitals.

In the *Miller* case, a deed recited that the conveyed property was the separate property of the wife. *Miller*, 452 S.W.2d at 429. The court would not admit testimony that the property was the community property of the marriage. The court found that parol evidence, which contradicted the express recital that the property was the separate property of the wife, would not be admitted unless a showing of fraud, accident, or mistake was made. *Id.* at 431.

The Kohrs respond that the court properly admitted parol evidence that Mrs. Kohr paid for the land with her separate property because parol evidence is admissible: (1) to disclose facts that create a resulting trust, (2) to show true consideration, and (3) to rebut the presumption that title in both names signifies a gift. The Kohrs also distinguish the Gillespie County deed from the documents at issue in *Massey* and *Miller*. The cases which hold that parol evidence is not admissible to contradict the express recitals in a deed, involve deeds which expressly state that property is conveyed to grantees as their *separate property* or for their *separate use. See id.* at 429; *Messer v. Johnson*, 422 S.W.2d 908, 912 (Tex.1968); *Kahn v. Kahn*, 94 Tex. 114, 58 S.W. 825, 826 (1900). The decision to exclude parol evidence rests "not upon a recital of contractual consideration, but upon the fact that the instrument stipulated, in effect, that the beneficial ownership of the property was conveyed to the wife for her separate use." *Jackson v. Hernandez*, 155 Tex. 249, 285 S.W.2d 184, 186 (1955). Because the Gillespie County deed does not expressly recite the character and use of the property, we find that the parol evidence rule does not prevent introduction of evidence to rebut the presumptions of community property and gift. Thus, we need not determine whether parole evidence can be admitted to prove a resulting trust or to show true consideration. We overrule the first issue presented.

### Affirmative Defense

In their second issue presented, the Bahrs allege that the trial court erred by admitting evidence regarding separate funds or separate property because the Kohrs filed only a general denial and failed to plead an affirmative defense of separate property or separate funds. Rule 94 of the Rules of Civil Procedure sets forth a list of specific affirmative defenses, which does not include separate property or separate funds. TEX.R. CIV. P. 94. However, Rule 94 also provides that any other matter constituting an avoidance or an affirmative defense must be specifically pled. An affirmative defense does not tend to rebut the factual propositions asserted in the plaintiff's case, but rather seeks to establish an independent reason why the plaintiff should not recover. *Gorman v. Life Ins. Co. of North America*, 811 S.W.2d 542, 546 (Tex. 1991), *cert. denied*, 502 U.S. 824, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991). "An affirmative defense is one of avoidance, rather than a defense in denial." *Id.* The Kohrs argue that separate property or separate funds are not affirmative defenses and their general denial put in issue the ownership of the Gillespie County property. "A general denial of matters pleaded by the adverse party which are not required to be denied under oath, shall be sufficient to put the same in issue." TEX.R. CIV. P. 92.

The Bahrs point to two cases for the proposition that separate property or separate funds are affirmative defenses. *See Weatherall v. Weatherall*, 403 S.W.2d 524 (Tex.Civ. App.—Houston 1966, no writ); *Grogan v. Henderson*, 313 S.W.2d 315 (Tex.Civ.App.— Texarkana 1958, writ ref'd n.r.e.). In *Weatherall*, the trial court awarded damages to a spouse who had contributed community funds to the other spouse's separate property. *Weatherall*, 403 S.W.2d at 525. The

court found that the trial court erred in awarding the damages because the pleadings did not assert separate property or more importantly reimbursement. *Id.* at 526. The *Weatherall* case seems to focus more on reimbursement as the affirmative defense that must be plead in order to recover damages. In the *Grogan* case, the court acknowledged that the appellees did not plead separate property as an affirmative defense. *Grogan,* 313 S.W.2d at 320. However, the court found that evidence of separate funds was submitted to the jury without objection and therefore the issue was waived. *Id.* The case does not hold that separate property must be plead as an affirmative defense.

In this case, we do not find that separate property or separate funds are affirmative defenses. In order to prove that Mr. Kohr fraudulently conveyed the Gillespie County property, the Bahrs must necessarily prove the ownership of the property. An affirmative defense must be capable of defeating the plaintiff's cause of action even though the plaintiff proves its case. Without proving that Mr. Kohr owns the property, the Bahrs cannot prevail on their claim. The Kohrs' general denial properly raised the issue of ownership of the Gillespie County property. Thus, the court did not err in admitting evidence regarding separate funds or separate property. We overrule the second issue presented.

### Separate Property

The Bahrs argue in their third issue presented that the evidence is factually insufficient to support the court's finding that the Gillespie County property was purchased with Mrs. Kohr's separate property. Findings of fact are reviewable for the legal and factual sufficiency of the evidence to support them. *Whitehead v. University of Texas Health Science Ctr. at San Antonio,* 854

S.W.2d 175, 178 (Tex.App.—San Antonio 1993, no writ). Findings of fact are reviewed by the same standards applied to the sufficiency of the evidence supporting a jury finding. *Hatteberg v. Hatteberg,* 933 S.W.2d 522, 529 (Tex.App.—Houston [1st Dist.] 1994, no writ). In reviewing factual sufficiency issues, the reviewing court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

A party asserting separate property has the burden of rebutting the community property presumption by clear and convincing evidence. *McElwee v. McElwee,* 911 S.W.2d 182, 188 (Tex.App.—Houston [1st Dist.] 1995, writ denied). The requirement of clear and convincing evidence is merely another way of stating that there must be factually sufficient evidence. *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex.1975); *Faram v. Gervitz-Faram,* 895 S.W.2d 839, 843 (Tex.App.—Fort Worth 1995, no writ). To rebut the presumption, the party must generally trace and clearly identify property claimed as separate property. *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973). "The issue of whether property is separate or community property is determined by the facts which, according to rules of law, give character to the property." *McElwee,* 911 S.W.2d at 188. "Mere testimony that property was purchased with separate property funds, without any tracing of the funds, is generally insufficient to rebut the presumption." *Id.*

Mr. and Mrs. Kohr testified that they partitioned or divided the proceeds 50/50 of the sale of the New Jersey farm in September of 1987.[2] The title closing statement showed

---

**2.** The Kohrs also offered testimony that Mrs. Kohr made the down payment on their first house from her separate savings account and a loan from her mother. Mr. Kohr contributed to the mortgage on the house. The Kohrs sold the house and put the proceeds into the New Jersey farm. By arguing that the proceeds of the New Jersey farm were partitioned and thus became separate property, we infer that the Kohrs are not trying to trace the funds used to acquire the

Gillespie County property from Mrs. Kohr's separate savings account. The Bahrs seem to accept the Kohrs' assertion that Mrs. Kohr's proceeds of the New Jersey farm became her separate property because they divided the proceeds of the sale of the farm "50/50." "At any time, the spouses may partition or exchange between themselves any part of their community property, then existing or to be acquired, as the spouses may desire." TEX. FAM.CODE ANN. § 4.102 (Vernon

that the net proceeds of the sale were $2,710,033.66.[3] The 2.2 million of the net proceeds were paid to an escrow agent for purposes of acquiring exchange property. The closing statement stated that the balance of $510,033.66 was paid to Vivian E.S. Kohr. Mr. Kohr testified that part of Mrs. Kohr's proceeds went to an escrow agent as part of a 1031 exchange to buy property in Utah. The Kohrs testified that the remainder of her proceeds (presumably $510,033.66) was deposited into her money market account at Flemington National Bank. The Kohrs offered Exhibit four as evidence that Mrs. Kohr used her separate funds to purchase the Gillespie County property. Exhibit four showed that on May 25, 1988 Mrs. Kohr's money market account had a balance of $705,834.57. On June 8, a check for $25,000 was written which, according to Mr. Kohr's testimony, was the earnest money for the Gillespie County property. According to testimony, the debit memo of $576,000 on June 14 was the remaining purchase price of the property. Mrs. Kohr testified that the money to buy the Gillespie County property came from her personal account and Mr. Kohr did not put up any of the money for the property.

The Bahrs contend that the Kohrs did not clearly trace Mrs. Kohr's separate property from the proceeds of the New Jersey farm to the purchase of the Gillespie County property. The Bahrs point to the fact that no documentation was provided to show: (1) the date the money market account was opened; (2) the running balance of the account between the date of its opening and June 1988, showing any debits or credits and their source; or (3) the identification of the party receiving the wire transfer of June 14th.

The Bahrs argue that the evidence in this case is similar to that in the *McKinley* case. *McKinley*, 496 S.W.2d at 543–44. In *McKinley*, the only evidence introduced to trace separate funds was an account sheet. The account sheet was found to be wholly inconclusive as to the nature of funds deposited or withdrawn. *Id.* The court found that to come to any conclusion about property status would require surmise and speculation and found that the presumption of community property had not been overcome. *Id.* at 544.

In *Anderson*, the appellee testified that she had transferred separate funds into a checking account from which a down payment on a house was made. *Anderson v. Gilliland*, 677 S.W.2d 105, 107 (Tex.App.—Dallas 1984), *rev'd on other grounds*, 684 S.W.2d 673 (Tex.1985). The court of appeals found that the appellee failed to produce sufficient evidence to rebut the presumption of community property. The court stated that the record did not show when the separate funds were transferred, how much was transferred, or whether the checking account contained any community funds when the transfer was made. *Id.* In reversing part of the *Anderson* case, the supreme court expressly stated that the judgment of the court of appeals is affirmed insofar as it holds that separate funds were not properly traced. *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex.1985).

In order to overcome the presumption by clear and convincing evidence, the Kohrs must trace and identify the funds used to purchase the Gillespie County property from Mrs. Kohr's half of the proceeds of the sale of the New Jersey farm. Mrs. Kohr's proceeds must be clearly traced to the money

Pamph.1998). Property transferred under a partition agreement becomes that spouse's separate property. *Id.* However, in Texas the partition agreement *must* be in writing and signed by both parties. *Id.* § 4.104. There is no evidence in this case that the Kohrs agreed in writing to partition the proceeds of the New Jersey farm. However, we acknowledge that the partition of the proceeds occurred in New Jersey and thus, we assume New Jersey law would apply. Therefore, we will begin our evaluation of the tracing of separate funds from the time Mrs. Kohr received half of the proceeds of the New Jersey farm as her separate property.

3. The closing statement also showed that the gross proceeds were $4,601,438.68. Then, disbursements were made on behalf of the seller. Disbursements of $662,027.16 and $853,782.36 were made to two mortgage companies. A handwritten note beside these two payments said: "Corp. loans guaranteed and Bradley paid off." We assume that these are the debts that Mr. Kohr testified he paid with his half of the proceeds of the sale.

market account. Mr. Kohr testified that the money market account was opened May 25, 1988 and Mrs. Kohr testified that the account was created at the time of the sale of the New Jersey farm in September of 1987. The Kohrs provided no documentation showing the date the money market account was opened, the beginning balance, or debits and credits to the account. Thus, the Kohrs failed to trace, by clear and convincing evidence, Mrs. Kohr's proceeds of the New Jersey farm of presumably $510,000 into the money market account. Proof that the money market account had a balance of $705,834.57 on May 25, 1988 does not clearly trace Mrs. Kohr's proceeds from the sale of the New Jersey farm.

Therefore, we find that the Kohrs failed to overcome the presumption of community property by clear and convincing evidence. Thus, the evidence was factually insufficient to support the court's finding that separate property was used to purchase the Gillespie County property. We sustain the third issue. Therefore, we need not address the Bahrs' remaining issues.

We reverse and remand the case for a new trial.