NUMBER 13-98-522-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


MARCIA WEST
, Appellant,


v.



DAVID WEST
, Appellee.

___________________________________________________________________


On appeal from the 103rd District Court


of Cameron County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez 


Opinion by Justice Dorsey



 Maria West appeals the trial court's final decree of divorce dated
July 1, 1998. Specifically, she brings four points of error complaining
of the trial court's distribution of marital property and one point
complaining that she was denied due process by the court's manner of
conducting the trial on the merits.

 We first address Ms. West's constitutional concerns. Maria
contends that her rights of due process were violated by the trial court's
failure to allow her an adequate time to present her case. The divorce
contained contested issues of property, domestic violence, custody of
the parties' small children, special health issues related to the children,
and tort claims based on physical abuse. The court also heard evidence
regarding a motion for enforcement filed by David West, her ex-husband, contending that Maria violated an order requiring her to give
him possession of the children for visitation.

 The trial court set limits on the amount of time allowed for the
trial. Originally, the matter was heard on October 2, 1997. Prior to
taking testimony, the court informed each side that he would allow one
hour per side for both direct and cross. Maria, who was the respondent
below, was allowed to take the first witness out of turn, who was a
police officer who testified that he had been called to her house for
domestic violence and when he arrived, Maria's face was bloody and
she had a bite mark.

 David then called his witnesses: Maria and himself. Maria's
attorney declined the opportunity to cross-examine Maria at that time,
but conducted a lengthy cross-examination of David. At the end of the
day on October 2nd, the court interrupted Maria's attorney's re-cross
of David and stated:

 . . . I am going to extend the time limit by one hour each. 
You have run over a little bit, Mr. Gilman (David's attorney),
but I'll make a note of how much everybody has used. We
are going to have to reset this matter . . . . 


 The trial resumed over two months later with David's attorney
continuing direct examination of David. He conducted another
moderately thorough direct examination, and then Maria's attorney,
again, cross-examined David extensively. Near the end of her cross-examination, the court stated:

 Counsel, let me warn you, you're getting close to the time
limits that I had previously set. You are running out of time,
you are about to not have any more.


She quickly wrapped up her cross examination. After redirect, the court
informed the parties that Maria had five minutes remaining and David
had twenty. At that point, Maria's attorney apparently realized that she
only had five minutes in total remaining:

 Counsel: [Your honor], . . . can we take my witnesses out
of order that are here under subpoena?


 Court: Sure.


 David's

 attorney: We're going to finish this case today, aren't we?


 Court: I'm not sure how much we are going to do in five
minutes, but whatever you can do in five
minutes, we can do out of order.


 Maria's

 attorney: I haven't put on any witnesses yet, Your Honor.


 Court: . . . We apparently have to deal with this problem
. . . . At the--initially I gave y'all one hour to the
side to present this. At some point fairly early on,
I extended that to two hours to the side to give
you ample opportunity to develop things. And
how you used it was up to you. We are--both of
y'all are fast approaching the end of your time, so
how you choose to use it or not, if you want to
put on somebody out of order because I know we
have a bunch of witnesses here.


 Maria's

 attorney: Your Honor, when you announced the two hours
to a side, I wasn't aware that my cross
examination counted on my two hours.


 Court: I made that absolutely clear, counsel. I'm not--I
mean, why would I put a time limit and then . . .
let you cross examine forever. You're putting on
testimony when you're cross examining. I am
not going to let you cross examine indefinitely.


 Maria's

 attorney: Well, I thought that I was limited to one hour on
cross examination so that I could get at least my
one hour to put on my case . . .


 Court: Counsel[,] you used over an hour just cross
examining Mr. West, and that's not counting
what happened previously.


 Maria's

 attorney: Well, I need permission from the Court to put on
my witnesses, and I think I can put my witnesses
on by giving me at least five to twenty minutes
each, but the qualifications on one of them is
going to take a good five or ten minutes unless
we can stipulate.


The court never responded to the request for five to twenty minutes per
witness, but proceeded on with taking testimony from Maria's first
witness.

 Maria called the principal of the children's elementary school and
a counselor from Texas Rehabilitation Commission (TRC) that had
worked with Maria and testified about her depression. At the close of
the TRC counselor's testimony, while the witness was searching for a
document, the court informed Maria's attorney that she had one minute
left. Before she found the document, the court announced that their
time was up. The court refused to let her call her next witness.

 She made an offer of proof that her next witness would have been
a next door neighbor who called the police the day of the alleged
assault. Also, she stated that she intended to call an additional witness
who could testify about Maria's compliance with the visitation order
and also about the physical abuse. She also proffered pictures taken of
Maria after the incident of abuse. Later in the trial, she stated that she
would have called Maria for direct if she had time left, to counter
testimony offered by David's mother to the effect that David never
physically abused Maria.

 Again, the trial ran up until 5:00 p.m., when the Court stated:

 . . . I am going to have to interrupt at this point because I
have got some matters that have to be attended to. It is
now 5:00, or it will be in a minute, I am going to, since the
only thing we are doing now is the contempt, I can continue
with that without reference to the divorce, is[sic] evidence
has already been received. What I am going to do, because
of a couple of reasons, one, because of the split thing, and
to give everybody a chance to sort of summarize matters, I
am going to take the matter under advisement on the
divorce, and give Mr. Gilman ten days to respond. I know
there are some legal issues here involved relative to separate
and community property that need to be addressed. I'll give
you ten days to give me anything you want on that, plus
summarizing anything, you know, what you want and how
you think I ought to dispose of the divorce part of this. I will
give Ms. Perez (Maria's attorney) ten days after that to do
the same, again, particularly requesting that y'all address the
community property issue, and also just to bring into focus
exactly what you want totally out of this, because in case
some of this has slipped past me because it is unfortunate
that we have had this delayed, part of which is my fault, part
of which is not, and then as soon as I can get all of that and
decide how I'm going to rule, I'll set a real quick hearing to
one, render a judgment in open court, and two, give y'all a
few more minutes to finish up this contempt proceeding and
rule on that right on the spot. . . .


 You have got ten days [in which to file] a letter brief, kind of
responding, you know, what's your legal position on the,
you know, the community property issue is a little tricky and
how--what your theory is and how you think you complied
with it by what your exhibits show, your various exhibits
show, how you're tracing and so forth. And Ms. Perez
(Maria's attorney) can respond, and then I'll give y'all a
ruling as quickly as I can get all those things and get them
ready.


 Also, while it appears that David did comply with the court's
request for a post-trial letter brief, neither her brief nor the record
indicates that Maria complied. We also note that despite the time
limitations, Maria offered forty-three exhibits into evidence, and David
offered eight. During the trial, eight exhibits were received from David;
forty-three from Maria.

 Due process dictates that a litigant has a right to be heard and a
court must protect that right. See In the Interest of J. (B.B.) M., 955
S.W.2d 405, 410 (Tex. App.--San Antonio 1997, no pet.). Both the U.S.
and the Texas Constitutions provide that a person shall not be deprived
of life, liberty, or property without due process of law. "Fundamental
to the concept of due process is the right to be heard." Fuentes v.
Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

 The right to be heard assures a full hearing before a court
having jurisdiction of the matter, the right to introduce
evidence at a meaningful time and in a meaningful manner,
and to have judicial findings based upon that evidence. 
Turcotte v. Trevino, 499 S.W.2d 705, 723 (Tex. Civ.
App.--Corpus Christi 1973, writ ref'd n.r.e.).


Jordan v. Jordan, 653 S.W.2d 356, 357­59 (Tex. App.--San Antonio
1983, no writ).

 Complete denial of the opportunity to present any evidence is a
clear violation of due process. Producer's Const. Co. v. Muegge, 669
S.W.2d 717, 718­19 (Tex. 1984); Central Park Bank v. LeBlanc, 659
S.W.2d 872 (Tex. App.--San Antonio 1983, no writ); Tobola v. State,
538 S.W.2d 868, (Tex. Civ. App.--Houston [14th Dist.] 1976, no writ). 
However, the trial court is vested with broad discretion regarding the
admission and presentation of evidence. Gee v. Liberty Mutual Fire Ins.
Co., 765 S.W.2d 394, 396 (Tex. 1989).

 We hold that the trial court did not abuse its discretion in setting
limits on the amount of testimony it would hear. On two different
occasions, Mrs. West was given one hour to present her case, and on
both occasions, she used virtually all of her time on a fruitless cross-examination of Mr. West. It was the actions of her attorney rather than
those of the court that handicapped her ability to present evidence. 
After the first hearing, Mrs. West had over two months to focus her
case and condense it to the most relevant evidence before the next
hearing where she would start fresh with another hour for her case. 
She simply did not take advantage of that opportunity. Furthermore,
Mrs. West was able to admit forty-three exhibits for the trial court's
consideration. That hardly amounts to such a severe curtailment of her
ability to put on evidence that due process is offended.

 Mrs. West ignored the opportunity to submit a post-trial letter
brief. This Court has held in an injunction case that failing to comply
with such a request by the trial court amounts to a waiver of error on
that issue. Reading & Bates Const. Co. v. O'Donnell, 627 S.W.2d 239,
234­44 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.).

 Finally, Mrs. West has not shown how the trial court's limitations
probably caused rendition of an improper judgment. See Tex. R. App. P.
44.1. She only identified one fact witness who could testify regarding
the abuse incident. The other witness she mentioned was relevant only
to the contempt matter, which was reset for a later time. She had
already offered the evidence from the police officer regarding that
incident, and she did not point out how the evidence from the omitted
witness would have been more than cumulative. While she did
mention the need to have Mrs. West testify on direct, she did not point
out how that would have helped her case. We overrule her first point.

 Next, Maria argues that the trial court erred by failing to include
David's military retirement benefits that accrued during the marriage as
a part of the community estate. However, she points to no evidence
that David had accrued any military benefits. Although there was
mention at trial of him serving in the military, his benefits were never
discussed. An inventory of the parties' marital estate was not provided
to the court by either party. The trial court made no findings of fact on
that issue, but the decree states that "The Court finds that no
community property other than personal effects has been accumulated
by the parties."

 The general rule for division of property is that upon divorce, the
court shall order a division of the estate of the parties in a just and right
manner, having due regard for the rights of each party and any children
of the marriage. Tex. Fam. Code. Ann. § 7.001 (Vernon 1998). It is
axiomatic that a party claiming an interest in the asset must offer some
evidence of the existence of that asset before the court can divide it. 
Maria failed to show that retirement benefits existed.

 The family code provides a procedure for division of property not
divided at the time of divorce. See Tex. Fam. Code. Ann. § 9.201 (Vernon
1998). Upon entry of a divorce decree, the former spouses hold any
undivided community property as tenants in common, and the proper
method for addressing such an undivided asset is a partition suit. See
Wilde v. Murchie, 949 S.W.2d 331, 332 (Tex. 1997). This is the proper
remedy for Maria's claim of undivided military benefits, if any.

 We overrule her second point of error.

 Next, Maria contends that the trial court erred in granting a
divorce without obtaining market values in determining a just and right
division of the community estate. On the contrary, the court determined
that no community property other than personal effects had been
accumulated by the parties, and awarded each party's personal effects
to the party having possession. We overrule her third point of error.

 Finally, Maria argues that the trial court erred by finding that the
house and lot acquired during the marriage was David's separate
property. The undisputed testimony is that the house was purchased
with the proceeds from a wrongful death recovery resulting from the
death of David's father. Maria contends that David intended to make
a gift of an interest in the house to her.

 The trial court made the following findings regarding this issue:

 1. David West acquired a separate estate by virtue of a
recovery in a wrongful death action resulting from the
death of his father.


 2. Funds from that recovery were traced to the purchase
of the house and lot which was primarily the subject of
controversy herein.


 3. Funds recovered in a lawsuit for the statutory cause of
action for wrongful death is the separate property for
the party receiving that recovery.


 4. If separate property funds can be traced to the
purchase of property during the marriage, that property
is the separate property of the person whose separate
funds were traced to the purchase.

 Community property, the only property that is subject to a just and
right distribution upon divorce, is all property other than separate
property acquired by either spouse during marriage. Tex. Fam. Code
Ann. § 3.002 (Vernon 1998). All property possessed by either spouse
during or upon dissolution of the marriage is presumed to be
community, and proof by clear and convincing evidence is necessary to
establish that it is separate. Id. at § 3.003.

 We begin with the presumption that the house is community
property. The presumption that all property possessed at divorce is
community may be rebutted by clear and convincing evidence tracing
property and its mutations back to a spouse's separate estate. Id. at
3.002. The recovery for personal injuries sustained by the spouse
during the marriage, excluding any recovery for loss of earning capacity
during marriage, is separate property. Id. at § 3.001(3). Because the
proceeds of the wrongful death lawsuit was David's separate property
and both parties admitted the home was purchased with that money,
the presumption that the house was community was effectively
rebutted.

 However, when a spouse uses separate property to acquire
property during marriage and takes title to that property in the name of
both spouses, a different presumption arises that the purchasing
spouse intended to make a gift of one-half of the separate funds to the
other spouse. Cockerham v. Cockerham, 527 S.W.2d 162, 168
(Tex.1975); Bahr v. Kohr, 980 S.W.2d 723, 726 (Tex. App.--San Antonio
1998, no pet.); Peterson v. Peterson, 595 S.W.2d 889, 892 (Tex. Civ.
App.--Austin 1980, writ dism'd); Hampshire v. Hampshire, 485 S.W.2d
314 (Tex. Civ. App. Corpus Christi 1973, no writ). The presumption is
rebuttable, and parol evidence is admissible to show that a gift was not
intended. Galvan v. Galvan, 534 S.W.2d 398 (Tex. Civ. App. Austin
1976, writ dism'd); Cockerham, 527 S.W.2d at 168; Bahr, 980 S.W.2d
at 726. 

 Maria testified that while the house was purchased with the
proceeds from the lawsuit, David gave her an interest in the home for
her and her children as a Christmas present in December of 1993. 
When asked what evidence she had that it was a gift, she stated that
"When we signed, he said that [it was a gift to me] in front of the lady
that was selling the house to us, Century or something like that." She
offered extensive closing documents and title-related documents
showing that the house was indeed taken in both of their names.

 David testified that he never intended to make it a gift. We hold
that is sufficient to rebut the presumption of gift raised by Maria's
evidence.

 A gift is a voluntary transfer of property to another made
gratuitously and without consideration. Hilley v. Hilley, 161 Tex. 569,
342 S.W.2d 565, 569 (1961); Roberts v. Roberts, 999 S.W.2d 424, 436
(Tex. App.--El Paso 1999, no pet. h.). Three elements are required to
establish the existence of a gift: (1) intent to make a gift; (2) delivery
of the property; and (3) acceptance of the property. Roberts, 999
S.W.2d at 436. Generally speaking, one who is claiming the existence
of a gift has the burden of proof. Grimsley v. Grimsley, 632 S.W.2d
174, 177 (Tex. App.--Corpus Christi 1982, no writ). However, where
the conveyance is from one spouse to the other spouse presumptions
of gift arise. Cockerham v. Cockerham, 527 S.W.2d 162, 168
(Tex.1975).

 We hold that Maria failed to carry her burden of proving that the
property was intended to be a gift. We affirm the judgment of the trial
court in all respects.


 ______________________________

 J. BONNER DORSEY,

 Justice


Do not publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 17th day of May, 2000.