Affirmed and Memorandum Opinion filed June 20, 2006









Affirmed and Memorandum Opinion filed June 20, 2006.

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-05-00117-CV

_______________

 

RICHARD E. HAWKINS, Appellant

 

V.

 

AMY HAWKINS, Appellee

                                                                                                                                               


On Appeal from the 328th District Court

Fort Bend County, Texas

Trial Court Cause No. 04CV134199

                                                                                                                                               


 

M E M O R A N D
U M   O P I N I O N

 








This case is an appeal from a final divorce decree.  Richard E. Hawkins and Amy L. Hawkins were
married on November 29, 1991.  There were
no children born of the marriage.  On
January 28, 2004, Mrs. Hawkins filed a petition for divorce.  Following a bench trial, the trial court
entered the divorce decree dividing the marital estate between the
parties.  In three issues, Mr. Hawkins
challenges the trial court=s property division. 
Specifically, Mr. Hawkins contends that the trial court erred by (1)
characterizing a television as community property instead of his separate
property, (2) awarding Mrs. Hawkins a disproportionate share of assets, and (3)
allowing his mother-in-law to testify about the value of a Afour-wheeler.@ 
Because all issues are clearly settled in law, we issue this memorandum
opinion and affirm.  See Tex. R. App. P. 47.4.

I. 
Characterization of Television as Community Property

In his first issue, Mr. Hawkins contends that the trial court
erred by incorrectly characterizing a television as community property instead
of his separate property and awarding it to Mrs. Hawkins.  There is a statutory presumption that
property possessed by either spouse during or on dissolution of marriage is
community property.  See Tex. Fam. Code Ann. '3.003 (Vernon 1998).  To overcome this presumption, a spouse must
present clear and convincing evidence to establish the property is separately
owned.  See id.  The spouse claiming separate property must
trace the property through evidence showing the time and means by which the
spouse originally obtained possession of the property.  See Smith v. Smith, 22 S.W.3d 140, 144
(Tex. App.CHouston [14th Dist.] 2000, no pet.).

At trial, Mr. Hawkins testified that his parents gave him
money Afor Christmas and a birthday present@ to Abuy the electronics.@[1] 
He further testified that he used the money to purchase two large
televisions.  Mrs. Hawkins testified that
she purchased the couple=s Aentertainment center@ with community funds. [2]  The trial court awarded one of the disputed
televisions to Mr. Hawkins and the other to Mrs. Hawkins.








In the absence of any documentation or testimony to
corroborate his assertions that the televisions were separate property, Mr.
Hawkins failed to meet his burden to overcome the community property
presumption.  Testimony that property was
purchased with separately owned funds is generally not, without more, sufficient
to rebut the presumption.  See Bahr v.
Kohr, 980 S.W.2d 723, 728 (Tex. App.CSan Antonio 1998, no pet.).  Moreover, as the sole judge of witness
credibility, the trial court could have reasonably disbelieved Mr. Hawkins and
believed Mrs. Hawkins.  See Murff v.
Murff, 615 S.W.2d 696, 700 (Tex. 1981) (noting in relevant part that the
trial court in a divorce case has the opportunity to observe the parties on the
witnesses stand and determine their credibility).  

Further, even if the trial court mischaracterized the
television, any error did not have more than a de minimis effect on the trial
court=s Ajust and right@ division of the estate.  See Vandiver v. Vandiver, 4 S.W.3d
300, 302 (Tex. App.CCorpus Christi 1999, pet. denied) (noting that if Athe trial court mischaracterizes
property in its division of the marital estate, the error does not require
reversal unless the mischaracterization would have had more than a de minimis
effect on the trial court=s just and right division of the property@); McElwee v. McElwee, 911
S.W.2d 182, 189 (Tex. App.CHouston [1st Dist.] 1995, writ denied) (same); see also
Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985).  Accordingly, we overrule Mr. Hawkins=s first issue.

II. 
Disproportionate  Division of
Property in ANo-Fault@ Divorce








In his second issue, Mr. Hawkins contends that the trial
court abused its discretion by awarding Mrs. Hawkins a disproportionate share
of assets Awhere the grounds for divorce was
insupportability.@ The Texas Family Code requires the trial court to Aorder a division of the estate of the
parties in a manner that the court deems just and right, having due regard of
the rights of each party . . .@  Tex. Fam. Code Ann. ' 7.001 (Vernon 1998).  We review the trial court=s division of property in a divorce
decree under an abuse of discretion standard. 
Murff, 615 S.W.2d at 698.  AMathematical precision in dividing
property on divorce is usually not possible.@ 
Id. at 700.  Wide latitude
and discretion rests with the trial court, and it Ais empowered to use its legal
knowledge and its human understanding and experience@ in dividing the property.  Id. 
We will reverse on appeal only if the property division is so
disproportionate as to be manifestly unjust and unfair.  Smith, 22 S.W.3d at 143.

To support his contention that the trial court=s division of property was
disproportionate, Mr. Hawkins notes that the trial court awarded Mrs. Hawkins
the majority of the money the couple held as Aretirement funds.@ 
It is not clear which of the couple=s accounts Mr. Hawkins is including
in his calculation of Aretirement funds.@ 
However, he specifically complains that the trial court awarded Mrs.
Hawkins $102,000 from two mutual fund accounts held in Mr. Hawkins=s name.  The record reveals the net value of those two
accounts as $122,000.[3]  Therefore, if the two accounts had been
divided equally between the two parties, $41,000 of the amount awarded to Mrs.
Hawkins would have been awarded to Mr. Hawkins.








To determine whether the trial court=s division of the property was Amanifestly unjust and unfair,@ we must considerCnot only what Mr. Hawkins classifies
as Aretirement funds@Cbut all of the property.  See Martin v. Martin, 797 S.W.2d 347,
351 (Tex. App.CTexarkana 1990, no writ) (noting that
Ain order to determine if a division
is manifestly unjust, the comparison must include all of the property,
including the real estate@).  Here, the trial
court awarded Mr. Hawkins the couple=s home with approximately $34,000 in
equity and most of the electronics and furnishings.  In addition, Mrs. Hawkins received
approximately $42,000 in credit card debt compared to the approximately $17,800
assigned to Mr. Hawkins.  The trial court
also awarded Mr. Hawkins a gun collection valued at approximately $30,000.  The home equity, the disparity in debt, and
the value of the gun collection roughly account for the difference in the
amounts received by the parties from the two mutual fund accounts.  The disproportionate amount awarded to Mrs.
Hawkins therefore appeared to compensate for other disparities in favor of Mr.
Hawkins.  Mr. Hawkins does not argue, and
we do not find, that the remaining assets were divided disproportionately.[4]








Moreover, even if the trial court=s property division was slightly
disproportionate in favor of Mrs. Hawkins, Acommunity property need not be
divided equally.@ Murff, 615 S.W.2d at 699.  Mr. Hawkins appears to argue that the trial
court may not award a disproportionate share of property to one party in a
no-fault divorce.  See Philips v.
Philips, 75 S.W.3d 564, 572B73 (Tex. App.CBeaumont 2002, no pet.) (noting that Awhen dissolution of marriage is
sought solely on the ground of insupportability, evidence of fault . . . may
not be considered by the trial court in its just and right division of the
community estate.@). However, fault (when at issue) is one factor among many
the trial court may consider in its division. 
Id.  (noting ten nonexhaustive
Anon-fault@ factors the trial court may consider
in dividing a community estate); Murff, 615 S.W.2d at 699.  The trial court may also consider factors
such as the parties= capacities and abilities, disparity in earning capacities or
of incomes, whether one of the parties has wasted community assets, business
opportunities, education, relative physical condition, relative financial condition
and obligations, disparity of ages, size of separate estates, and nature of the
property.  Murff, 615 S.W.2d at
699; Philips, 75 S.W.3d at 572B73. 
Here, there is no indication the trial court considered Afault@ as a factor when dividing the
estate.  The record indicates that the
earning capacity of Mr. Hawkins was approximately $100,000 as compared to Mrs.
Hawkins, who earned approximately $60,000. 
The trial court could have concluded that Mrs. Hawkins would need a
disproportionate amount of the parties= cash assets to offset the additional
amount of community debt she was taking and/or to start anew after having been
displaced from her home.  Therefore, we
conclude that even if the trial court=s division was slightly
disproportionate in favor of Mrs. Hawkins, any disproportion was justified by
additional factors within the court=s discretion to consider.  Mr. Hawkins failed to show from the record
that the trial court=s division of the property was so disproportionate as to be
manifestly unjust and unfair. 
Accordingly, we overrule Mr. Hawkins=s second issue.

III. 
Valuation of AFour-Wheeler@

In his third issue, Mr. Hawkins contends that the trial court
erred by allowing his mother-in-law to testify as to whether a four-wheeler
would have  appreciated or depreciated in
value over a time period of approximately one year.  The trial court awarded the couple=s four-wheeler to Mrs. Hawkins.  Mr. Hawkins claimed the value of the
four-wheeler was about $1,500.  However,
at trial, Mr. Hawkins=s mother-in-law testified that she sold the four-wheeler
about a year ago to Mr. and Mrs. Hawkins for about $1,000.  She further testified that she arrived at the
price Aby going to the NADA website, and the
price that I was given after I put in the details of what the machine was a
thousand dollars or thereabout.@ She was next asked whether the four-wheeler would have gone
up or down in value from the time she sold the vehicle.  Over Mr. Hawkins=s objection that the question called
for speculation, she replied that the four-wheeler Awould have depreciated.@ 
No further questions were asked concerning the depreciation value.








Even if the trial court erred in allowing the testimony, any
error as to whether or not the four-wheeler depreciated in the last year was
harmless.  The depreciation value is de
minimis in this case and did not affect the trial court=s Ajust and right@ division of the property.  See McElwee, 911 S.W.2d at 189
(discussing harmless error in relation to de minimis values).  Accordingly, appellant=s third issue is overruled.

The judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed June 20, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

 

 











[1]  It is unclear
from the record exactly which of the couple=s Aelectronics@ Mr.
Hawkins was claiming at trial to be separate property.  However, on appeal, he argues only that the
television awarded to Mrs. Hawkins was improperly characterized.   





[2]  Mrs. Hawkins
states in her brief that Ashe personally purchased the television with community
funds.@  However, it is
not clear from the record whether the television sets or other electronic
equipment  were included in her testimony
concerning the Aentertainment center.@  





[3]  Mr. Hawkins
appears to refer to two accounts he categorized on his appraisal form as Abrokerage/mutual fund accounts.@  He listed the
value of the accounts as $70,000 and $52,000. 
The accounts were not included in the section entitled Aretirement benefits.@  Under federal law, the division of certain
private retirement benefits upon divorce may not be enforced in the absence of
a Qualified Domestic Relations Order (QDRO). 
See 26 U.S.C. ' 401(a)(13)(B) (2000); 29 U.S.C. ' 1056(d)(3) (2000). 
In a footnote in his brief, Mr. Hawkins contends that the trial court=s failure to issue a QDRO shows the trial court abused
its discretion by failing to follow applicable guiding rules and principles.  Mrs. Hawkins contends that the two accounts
at issue did not require a QDRO because they were not defined contribution
plans.  We cannot ascertain the exact
nature of either account from the record and therefore also cannot determine
whether a QDRO was required.  If a QDRO
was required, Mrs. Hawkins will have to petition the trial court for the order
before she will be able to obtain her portion of the funds.  See Tex.
Fam. Code Ann. ' 9.103 (Vernon 1998). 
However, the issuance of a QDRO order has no affect on the division of
the property itself or Mr. Hawkins=s
contention that the division was so disproportionate as to be manifestly unjust
and unfair.





[4]  Mr. Hawkins
does contend that the trial court divided many of the couple=s  assets Awithout regard to the value of the property.@ However, both parties submitted inventories and
appraisements of the community assets and liabilities.  The trial took place over three days, and the
record contains three volumes of testimony concerning everything from the value
of a charm bracelet to the age and brands of various pots and pans and
dinnerware.  Mr. Hawkins does not point
to, and we do not find, a specific asset or class of assets the trial court
awarded disproportionately without regard to value.