Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-11-00775-CV

Norris J. **DEVOLL** and Paulette DeVoll,
Appellants

v.

Rebecca **DEMONBREUN** and William Bruce Dowds,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-10538
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:   Sandee Bryan Marion, Justice

Sitting:   Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  November 21, 2012

AFFIRMED

Appellees, Rebecca Demonbreun and William Dowds, sued appellant, Norris DeVoll ("Norris"), for damages allegedly incurred as a result of the purchase of a house.  Judgment in favor of Demonbreun and Dowds was entered and they recovered $96,540.12 in actual damages and $47,461.64 in attorneys' fees.  Subsequently, Demonbreun and Dowds filed an Application for Turnover Relief, seeking to have Norris turn over his community property interests in RWI, Inc., the Two-O-Six Camedia Partnership, and income from the 3 K's and J Land Trust.  Paulette

DeVoll ("Paulette"), wife of Norris, filed an intervention in the turnover lawsuit in order to protect her rights in the contested properties. Following a hearing, the trial court ruled: (1) the stock of RWI, Inc. is the separate property of Paulette, but the net business income of the corporation is the community property of Paulette and Norris; (2) the partnership interest in the name of Paulette in the Two-O-Six Camedia Partnership is the community property of Paulette and Norris and income from the partnership is also community property; and (3) the 3 K's & J Land Trust and its income are the separate property of Paulette. Lastly, the trial court ruled that all cash in bank accounts in which Norris owned an interest should be turned over and that the Turnover Order was continuing in effect—thus, Norris had a continuing duty to turn over all community property described in the Order.

In an opinion and judgment dated September 12, 2012, we affirmed the trial court's judgment. Appellants filed a motion for rehearing. We deny the motion, but we withdraw our opinion and judgment of September 12, 2012, and issue this opinion and judgment in their place for the purpose of clarifying our conclusion regarding the property known as RWI, Inc.

## DISCUSSION

In three issues on appeal, the DeVolls contend the trial court erred by failing to enforce the provisions of their Agreement to Keep Property Separate ("Agreement"), which was entered into shortly after their marriage and years prior to Demonbreun and Dowds' lawsuit. First, the DeVolls assert the trial court abused its discretion when it found the net income from RWI, Inc. was community property and subject to the Turnover Order. Second, the DeVolls contend the trial court abused its discretion when it found that Paulette's interest in the Two-O-Six Camedia Partnership was community property and subject to the Turnover Order. Last, the DeVolls argue

the trial court abused its discretion when it extended the Turnover Order to cover property in which Norris does not, at this time, own any present or future interest.

An appellate court reviews an issuance of a turnover order for an abuse of discretion. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Abuse of discretion occurs when a trial court acts without reference to any guiding rules or principles, or acts in an arbitrary or unreasonable manner. *Id.* "In the context of turnover orders, it has been held that a trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason." *Id.* (citing *Buttles v. Navarro*, 766 S.W.2d 893, 894–95 (Tex. App.—San Antonio 1989, no writ)).

All property acquired by either spouse during marriage belongs to the marital estate, with the exception of property acquired by gift, devise, or descent. TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 3.002 (West 2006). However, the Texas Constitution recognizes the right of couples to enter into premarital or marital agreements for the purpose of altering the classification of spousal or community property. TEX. CONST. art. XVI, § 15. Additionally, public policy indicates that premarital and marital agreements should be enforced. *See Beck v. Beck*, 814 S.W.2d 745, 749 (Tex. 1991). As a result, agreements entered into between parties both before and during marriage are presumptively enforceable.

A party claiming separate property has the burden of rebutting the community property presumption by clear and convincing evidence. *Bahr v. Kohr*, 980 S.W.2d 723, 728 (Tex. App.—San Antonio 1998, no pet.). Clear and convincing evidence is another way of stating that the evidence supporting separate property must be factually sufficient. *Id.* To overcome the community property presumption, the party generally must trace and clearly identify property claimed as separate property. *Id.* Whether property is separate or community is determined by

the facts that give character to the property, according to the rules of law. *Id.* "Mere testimony that property was purchased with separate property funds, without any tracing of the funds, is generally insufficient to rebut the presumption." *Id.* (quoting *McElwee v. McElwee*, 911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ denied)).

## A. RWI, Inc.

Paulette and Norris, along with Norris's brother, Gene DeVoll ("Gene"), each acquired a one-third interest in RWI, Inc. when the corporation was initially set up in 1993. In 1994, Norris transferred his one-third interest to Paulette. In 1995, Gene transferred his one-third interest back to the corporation. Thus, Paulette became the sole owner of RWI, Inc. The trial court took notice of this when it held that the stock in RWI, Inc. was Paulette's separate property. However, the trial court determined that the net income from RWI, Inc. was Paulette and Norris's community property.

At the hearing, Paulette and Norris testified as to the establishment of RWI, Inc. and that, pursuant to the Agreement, the income generated from the corporation was Paulette's separate property. The pertinent provisions of the Agreement on which the DeVolls rely state that "All properties, both real and personal . . . are declared to be the separate property of that party. . . . In addition, all future income from and increases in kind or in value of each party's separate property will constitute the separate property of that party."

However, the Agreement also states that "For the purpose of segregating the parties' properties, the parties will establish and maintain accounting procedures and records and bank accounts to preserve the separate character of their respective separate funds as is further provided in this Agreement." Notably, upon cross-examination, neither Paulette nor Norris could produce any documentary evidence tracing the income generated from the corporation,

since 1994, back to Paulette's separate accounts. No bank documents were produced before January 2010 to show how Paulette kept the income separate from her accounts with Norris. When questioned on cross-examination, Norris admitted that he failed to produce any evidence tracing the income:

> Q: And you haven't produced any documents showing to whom those payments were made from RWI, correct?
>
> A. No. I have not.

Thus, although the Agreement states that income derived from separate property will remain separate property, the Agreement also states that the DeVolls must establish and maintain accounting practices to account for their separate property. Here, the only evidence that the income was Paulette's separate property was Paulette and Norris's testimony. *See Bahr*, 980 S.W.2d at 728–30 (noting that mere testimony concerning the nature of separate property is not sufficient to overcome the community property presumption). The DeVolls failed to provide any bank records or accounting evidence tracing the income solely to Paulette's separate accounts. Any person claiming property is separate has the burden to prove it by clear and convincing evidence. *Id.* at 728. Here, because the DeVolls did not provide evidence of the "accounting procedures and records and bank accounts to preserve the separate character of their respective separate funds" required in their agreement, we cannot say the trial court abused its discretion in concluding the income was community property.[1]

## B. Two-O-Six Camedia Partnership

The Two-O-Six Camedia Partnership was created in 2002, with Paulette and Gene as the general partners. Gene had a 50.1% interest and Paulette had a 49.9% interest. The purpose of the partnership was to acquire a piece of property owned by Norris and located at 466 Adrian, in

---

[1] Our conclusion should not be read as holding that all properly segregated future income from RWI, Inc. is community property.

San Antonio. The property was in foreclosure and the Two-O-Six Camedia Partnership bought the property.

At the hearing on the turnover, Paulette claimed she used her separate property to purchase her interest in the partnership. She testified that she used the funds derived from a 1996 settlement of a lawsuit involving her father. She stated that she deposited the funds into a money market account she owned prior to her marriage to Norris and that the funds had remained in that account until the purchase of the property at 466 Adrian. She testified that Norris never made any deposits into this account and that, other than the settlement proceeds, she had never made a deposit into this account during her marriage to Norris. However, Paulette could not produce any documents showing the amount of the settlement or any documents tracing the funds used to purchase the partnership property to a prior settlement:

> Q: Okay. So you don't have any bank account documents. You haven't produced any documents showing—[Counsel for Norris and Paulette] said that you had obtained a settlement, and that settlement money was what was used to buy the 466 Adrian property, right?
>
> A: That's correct.
>
> Q: But you haven't produced any documents showing the amount of the settlement, have you?
>
> A: I don't even think I have any of that any more.

Further testimony revealed that the exact amount of the settlement, the name of the bank into which the settlement funds were deposited, and the source of other funds in that account could not be determined. Accordingly, we cannot say the trial court abused its discretion in determining the Two-O-Six Camedia Partnership was the DeVoll's community property and not Paulette's separate property. *See id.* at 728–30 (determining that wife's testimony was insufficient to meet clear and convincing evidence standard that property was separate because

the evidence offered did not show date account was opened, running balance of account, or identity of party receiving wire transfer for asserted purchase of property at issue).

## C. Turnover Order

In their last issue on appeal, the DeVolls contend the trial court erred because the Turnover Order requires Norris to turn over property that he presently does not own and in which he has no future interest. Thus, the DeVolls complain the Turnover Order is beyond the scope of the turnover statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (West 2008).

Contrary to the DeVoll's interpretation, our review of the Turnover Order indicates the trial court did not order Norris to turn over property in which he does not presently own or have an interest. Instead, the Turnover Order requires Norris to turnover "[c]ash . . . on hand and in any bank account in which Norris J. DeVoll has an ownership interest." The Order also lists the property in which Norris has a community property interest and orders that he has "a continuing duty to turn over all *community property described [in the paragraphs] above*." Thus, we conclude the trial court did not abuse its discretion in ordering the specified property to be turned over and ordering that Norris has a continuing duty to turn over all community property described in the Order.

## CONCLUSION

We overrule the DeVoll's issues on appeal and affirm the judgment of the trial court.

Sandee Bryan Marion, Justice